**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR TANKER PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD,<br><br>Defendants In Rem. | ) | Civil Action No. 1:26-cv-01405-SLS<br><br>Judge Sparkle L. Sooknanan |

**SWINNEY CLAIMANTS' VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

Pursuant to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the judgment creditors identified in Exhibit B (collectively, the "Swinney Claimants") submit this Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture In Rem.

The Swinney Claimants hold a final judgment entered by this Court against the Islamic Republic of Iran ("Iran"), the Islamic Revolutionary Guard Corps ("IRGC"), and the Iranian Ministry of Intelligence and Security ("MOIS") under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A. That judgment arises from attacks against United States servicemembers in Iraq and from Iran's material support for the persons and organizations responsible. The judgment remains substantially unsatisfied.

The Swinney Claimants assert an interest in the Defendant Property under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note), limited to the amount necessary to satisfy the outstanding

compensatory portion of their judgment as awarded in that judgment, including prejudgment interest on pain and suffering and past economic loss, and exclusive of post-judgment interest and punitive damages. The Swinney Claimants reserve all rights concerning post-judgment interest.

This Claim asserts an interest in the res under Supplemental Rule G. It does not itself seek the issuance of a writ of attachment, writ of garnishment, or other affirmative process in this action. The Swinney Claimants reserve all rights to pursue separate attachment or execution process under TRIA and the March 17, 2026 order entered in Swinney.

## I. THE PROPERTY CLAIMED

1. The Swinney Claimants claim an interest in: (a) approximately 1.9 million barrels of Iran-origin crude oil laden aboard the M/T PHONIX at the time of its seizure in April 2026 (the "Defendant Cargo"); (b) the Motor Tanker PHONIX, International Maritime Organization Number 9198317 (the "Defendant Vessel"); and (c) all proceeds, traceable proceeds, accrued interest, and any substitute res resulting from an interlocutory or final disposition of either the Defendant Cargo or the Defendant Vessel (together with (a) and (b), the "Defendant Property").

2. The Swinney Claimants claim such portion of the Defendant Property, and of any proceeds or substitute res derived from it, as is necessary to satisfy their outstanding compensatory judgment balances.

3. As of August 3, 2026, those balances total $279,877,952.78 after application of distributions and credits reflected in the records available to counsel as of that date. The individual balances are set out in Exhibit B. Any later recovery will be credited before execution or distribution.

4. The Swinney Claimants assert their principal interest in the Defendant Cargo, for the reasons set out in Section III. They assert a further interest in the Defendant Vessel, on the basis and subject to the qualifications set out in Section IV.

## II. THE SWINNEY CLAIMANTS AND THEIR JUDGMENT

5. In *Swinney v. Islamic Republic of Iran*, No. 1:20-cv-02316-ACR (D.D.C.), this Court entered final judgment on May 30, 2025 in favor of the Swinney Claimants and against Iran, the IRGC, and MOIS. The final judgment, ECF No. 59, is attached as Exhibit A.

6. This Court determined that the Swinney Claimants established their entitlement to relief under 28 U.S.C. § 1605A. Iran, the IRGC, and MOIS are judgment debtors under that judgment.

7. Exhibit B identifies each Swinney Claimant, the capacity in which each recovered, the compensatory damages awarded to each, including prejudgment interest on pain and suffering and past economic loss as awarded in the judgment, distributions and credits reflected in counsel's records through August 3, 2026, and each claimant's remaining compensatory balance as of that date.

8. The Estate of Jonathan Ross Spears appears through Timothy L. Spears, who was appointed Personal Representative of that estate by the Circuit Court for Escambia County, Florida, Probate Division, File No. 2020 CP 1600, and who remains in office. The Estate of Daniel Varnado appears through Sharon Shavers, who was appointed Administratrix of that estate by the Chancery Court of Harrison County, Mississippi, First Judicial District, Cause No. 20-2494(4), and who remains in office. Copies of the respective Letters of Administration are attached to the estate representatives' verifications in Exhibit C.

9. The judgment remains substantially unsatisfied. Any further recovery received by a Swinney Claimant on account of the compensatory portion of the judgment will be credited against that claimant's remaining balance.

10. On March 17, 2026, this Court entered an order pursuant to 28 U.S.C. § 1610(c), determining that a reasonable period of time had elapsed following entry of the Swinney judgment and authorizing the Swinney Claimants to pursue attachment and execution upon property subject to attachment under applicable law. Swinney, ECF No. 75. That order is attached as Exhibit A-1.

## III. THE DEFENDANT CARGO IS PROPERTY OF IRAN OR OF AN AGENCY OR INSTRUMENTALITY OF IRAN, AND IS A BLOCKED ASSET

### A. Iran and the IRGC are Terrorist Parties

11. Iran has been designated a state sponsor of terrorism since January 19, 1984. Compl. ¶ 6. The IRGC, including the IRGC-Qods Force, was designated a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act effective April 15, 2019. Compl. ¶ 17.

12. Iran and the IRGC are therefore each a "terrorist party" within the meaning of TRIA § 201(d)(4).

### B. Iran Owns and Controls Its Petroleum Resources

13. The Verified Complaint alleges that, under Articles 44 and 45 of Iran's Constitution and Article 2 of Iran's Oil Law, Iran's oil resources constitute public wealth at the disposal of the Islamic government, and that the assets of the Ministry of Oil and its subsidiaries, at home and abroad, belong to the Iranian people and the Islamic government. Compl. ¶¶ 8–9.

14. The Verified Complaint alleges that the Iranian Ministry of Petroleum is a state-run organ affiliated with the executive branch of the Iranian government, and exercises authority over

Iran's petroleum industry through four subsidiaries, including the National Iranian Oil Company ("NIOC"). Compl. ¶ 7.

15. The Verified Complaint alleges that NIOC is Iran's national oil company and a subsidiary of the Iranian Ministry of Oil, responsible for the exploration, production, refining, and export of oil and petroleum products in Iran. Compl. ¶ 20.

16. The Verified Complaint alleges that the Iranian Oil Terminals Company ("IOTC") is a subsidiary of NIOC, that the government of Iran is IOTC's global ultimate owner, and that IOTC operates the Jask Oil Terminal. Compl. ¶¶ 22, 25.

17. NIOC and IOTC are each an agency or instrumentality of Iran for purposes of TRIA § 201(a).

### C. This cargo is Iranian state oil

18. The Verified Complaint alleges that between on or about April 9, 2026 and on or about April 12, 2026, the PHONIX called at the Jask Oil Terminal in Iran and there loaded approximately 1.9 million barrels of Iran-origin crude oil. Compl. ¶ 46.

19. The Verified Complaint alleges that the PHONIX was fully laden with that cargo when interdicted on or about April 22, 2026. Compl. ¶¶ 47–48.

20. The United States has represented to this Court that oil samples recovered from the PHONIX following its seizure confirm that the oil cargo was supplied by NIOC and loaded at the Jask Oil Terminal, and that the samples bear NIOC and IOTC labeling and sealing tags. ECF No. 7 at 2.

21. The United States has further represented that the only bills of lading identified in its document review indicate that ownership of the cargo remains with NIOC. ECF No. 7 at 22.

22. On August 21, 2026, the United States provided direct notice of this forfeiture action to NIOC and to Pars Oil and Gas Company as potential claimants to the Defendant Vessel or the Defendant Cargo. ECF No. 13 at 1.

23. On the basis of the foregoing, the Swinney Claimants assert that the Defendant Cargo is property of Iran and of an agency or instrumentality of Iran within the meaning of TRIA § 201(a).

24. The Court of Appeals has held, in a civil-forfeiture action concerning Iranian crude oil, that documentation identifying NIOC as consignor, taken together with NIOC's central position in Iran's oil industry, supports a reasonable inference that the oil belonged to NIOC, and has described NIOC as a state-owned enterprise alleged to act as an agent or affiliate of the IRGC. United States v. All Petroleum-Product Cargo Onboard the M/T Arina, 173 F.4th 342, 347–48 (D.C. Cir. 2026), petition for cert. filed, No. 26-103 (U.S. July 17, 2026). The inference is at least as strong here, where the United States alleges that the cargo was loaded at a terminal operated by a NIOC subsidiary, that recovered samples bear NIOC and IOTC labeling and sealing tags, and that the only identified bills of lading indicate NIOC ownership.

**D. The Defendant Cargo is a blocked asset**

25. Executive Order 13599 (Feb. 5, 2012) blocks all property and interests in property of the Government of Iran, including any person owned or controlled by the Government of Iran, that are in the United States, that come within the United States, or that come within the possession or control of any United States person.

26. Executive Order 13599 blocks the property of the Government of Iran by operation of its terms. The Defendant Cargo, being property of Iran and of Iranian state instrumentalities, is blocked property under Executive Order 13599 and the International Emergency Economic

Powers Act, 50 U.S.C. §§ 1701–1702, independent of and without regard to the seizure of the PHONIX or the commencement of this action.

27. The Defendant Cargo is therefore a "blocked asset" within the meaning of TRIA § 201(d)(2), and does not fall within any exclusion set out in TRIA § 201(d)(2)(B).

28. The Verified Complaint acknowledges that OFAC General License U temporarily authorized certain dealings in Iranian-origin crude oil loaded on or before 12:01 a.m. on March 20, 2026, and alleges that the Defendant Cargo was loaded after that date. Compl. ¶ 50 n.4. The Verified Complaint identifies no general or specific license authorizing dealings in the Defendant Cargo following the expiration of the authorization described in General License U.

## IV. THE DEFENDANT VESSEL

29. The Verified Complaint alleges that on or about December 3, 2024, OFAC designated Vision Ship Management LLP ("Vision") pursuant to Executive Order 13902 for operating in the petroleum sector of the Iranian economy, and that in the same action OFAC identified the PHONIX as blocked property in which Vision had an interest. Compl. ¶ 31.

30. The Swinney Claimants accordingly assert that the Defendant Vessel is blocked property, and satisfies the blocked-asset predicate of TRIA § 201(d)(2), to the extent that blocking remains operative under applicable IEEPA authorities.

31. Separately, and on information and belief, the Swinney Claimants assert that the Defendant Vessel was owned or operated for the benefit of, or performed material functions for, Iran or an agency or instrumentality of Iran. That assertion rests on the following allegations of the United States:

a. the PHONIX has loaded more than 15 million barrels of Iran-origin crude oil from Kharg Island since in or around May 2023, and has received by ship-to-ship transfer

more than 6 million barrels of Iran-origin crude oil and condensate from Kharg Island and Assaluyeh, worth hundreds of millions of dollars, Compl. ¶ 38;

b. the PHONIX is a member of Iran's "shadow fleet," a network of tankers and ship-management firms that transports Iranian petroleum to overseas customers in defiance of international sanctions, employing false documentation, manipulation of vessel tracking systems, and repeated changes to vessel names and flags, Compl. ¶ 31;

c. the PHONIX has repeatedly spoofed its automatic identification system position, including in areas where shadow-fleet tankers conduct ship-to-ship transfers, and in connection with its departures from Iranian terminals, Compl. ¶¶ 34, 44, 47;

d. the PHONIX claimed Guyanese registry that Guyanese authorities confirmed to be false, and was treated as stateless when interdicted, Compl. ¶¶ 28, 48;

e. Faith Enterprise Ltd., the vessel's registered owner, lists the same business address as Vision, Compl. ¶ 32; and

f. management of the PHONIX was purportedly transferred from Vision to Seaway Ship Management LLC in January 2025, shortly after Vision's and the PHONIX's designation, in a pattern the United States describes as common among designated vessels, whose new managers are often affiliates of the former ones. ECF No. 7 at 2 n.1.

32. The Verified Complaint alleges that the Defendant Property affords the Iranian Ministry of Petroleum, NIOC, and the vessel's owner and managers a source of influence over the Ministry, NIOC, and the IRGC, including the IRGC-QF, by transporting Iranian petroleum products to generate revenue for the IRGC. Compl. ¶ 1.

33. The Swinney Claimants do not ask the Court to resolve the status of the Defendant Vessel at the claim stage, and reserve the right to amend, supplement, narrow, or conform this portion of their Claim as the record concerning ownership, control, blocking, and instrumentality status is developed.

**V. THE SWINNEY CLAIMANTS HOLD A COGNIZABLE INTEREST IN THE DEFENDANT PROPERTY**

34. TRIA § 201(a) provides that, notwithstanding any other provision of law, where a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, the blocked assets of that terrorist party, including the blocked assets of any agency or instrumentality of that terrorist party, shall be subject to execution or attachment in aid of execution in order to satisfy the compensatory damages awarded.

35. TRIA § 201(a) abrogates the sovereign immunity that would otherwise protect the blocked assets of a terrorist party from execution, and confers on the holder of a qualifying terrorism judgment the right to execute and to attach in aid of execution against that defined category of property. The rights it confers run to the blocked assets of the judgment debtor and its agencies and instrumentalities, and are not merely generalized rights against a debtor's assets at large.

35a. The compensatory damages the Swinney Claimants seek to satisfy are the amounts awarded as compensatory damages in the judgment itself. The judgment awards each Swinney Claimant a "Total With Prejudgment Interest" figure, and then states a "Total Damage Award" defined as the "Total Compensatory and 1:1 Punitive Damage Award," which for every Swinney Claimant equals exactly twice the prejudgment-interest-inclusive figure. Swinney, ECF No. 59 at 1–2. The judgment therefore treats the prejudgment-interest-inclusive amount as the compensatory component of each award, and the doubled amount as compensatory plus an equal measure of

punitive damages. The Swinney Claimants accordingly assert an interest in the compensatory amounts so awarded, and claim no part of the punitive portion.

36. The Swinney Claimants hold a qualifying judgment under 28 U.S.C. § 1605A against terrorist parties; this Court has determined under 28 U.S.C. § 1610(c) that a reasonable period has elapsed and has authorized them to pursue attachment and execution, Swinney, ECF No. 75; and the Defendant Property comprises, as alleged above, blocked assets of those parties or of their agencies or instrumentalities. The Swinney Claimants therefore assert presently exercisable TRIA enforcement rights against the Defendant Property.

37. At the claim stage, the Swinney Claimants assert their interest pursuant to Supplemental Rule G(5) and TRIA § 201(a). The ultimate validity, extent, and priority of that interest, including the effect of any separate attachment or execution process pursued under TRIA and Swinney, ECF No. 75, are reserved for determination through the procedures provided by Supplemental Rule G and other applicable law.

38. The United States seeks forfeiture of the Defendant Property under 18 U.S.C. § 981(a)(1)(G)(i) on the ground that it affords a source of influence over the IRGC, a designated foreign terrorist organization. Compl. ¶ 50. The premise of the forfeiture is thus that the Defendant Property is connected to, and generates revenue for, the same terrorist parties against whom the Swinney Claimants hold judgment. The interest asserted here arises from the same character of the property that the United States alleges makes it forfeitable.

39. To the extent the United States contends that its title relates back to the commission of the acts giving rise to forfeiture, the effect and priority of any such relation-back theory as against the Swinney Claimants' asserted TRIA rights are reserved for determination on a developed record. Those issues need not be resolved at the claim stage.

## VI. THE PENDENCY OF THIS FORFEITURE PROCEEDING DOES NOT EXTINGUISH THE ASSERTED INTEREST

40. In Estate of Levin v. Wells Fargo Bank, N.A., 156 F.4th 632 (D.C. Cir. 2025), the Court of Appeals held that blocked funds remained blocked assets available under TRIA notwithstanding that OFAC had licensed the United States to pursue their forfeiture, rejecting the contention that authorizing forfeiture unfreezes property for TRIA purposes. The Court further held that the prior-exclusive-jurisdiction doctrine does not prevent a civil-forfeiture action and TRIA enforcement proceedings from proceeding against the same property in the same federal court.

41. Levin confirms that the pendency of a federal civil-forfeiture proceeding does not, by itself, render otherwise blocked property unavailable under TRIA, and that where TRIA specifically authorizes attachment that a conflicting civil-forfeiture provision would prohibit, TRIA's "notwithstanding" clause controls. Estate of Levin, 156 F.4th at 642–43 & n.1.

42. The Swinney Claimants cite Levin for the limited proposition that their asserted TRIA enforcement rights are not extinguished merely by the pendency of this forfeiture action or by an interlocutory sale, and may be adjudicated consistently with the Court's jurisdiction over the Defendant Property and any substitute res.

## VII. SUBSTITUTE RES, PRIORITY, AND RESERVATION OF RIGHTS

43. Supplemental Rule G(7)(b)(iv) provides that proceeds of an interlocutory sale constitute a substitute res subject to forfeiture in place of the property sold, to be deposited in an interest-bearing account pending conclusion of the forfeiture action.

44. Any interest of the Swinney Claimants in property disposed of during this proceeding attaches to and continues against the corresponding substitute res to the same extent, and with the same validity and priority, if any, as immediately before the disposition, without

prejudice to any party's position concerning standing, ownership, blocked-asset status, TRIA, priority, or forfeiture.

45. The Swinney Claimants assert that their rights under TRIA § 201(a) are superior to non-TRIA interests in the Defendant Property. As among competing holders of qualifying TRIA judgments, the Swinney Claimants reserve all rights concerning priority, including any priority arising from the issuance, delivery, service, levy, attachment, execution, or other enforcement process applicable to the Defendant Property or any substitute res.

46. The Swinney Claimants reserve the right to amend or supplement this Claim and its exhibits as additional facts, distributions, ownership interests, sanctions information, enforcement process, or competing claims are identified, and to seek discovery concerning the ownership, traceability, blocking status, seizure, custody, valuation, sale, and disposition of the Defendant Property.

47. The Swinney Claimants will serve and file an answer or a motion under Rule 12 within 21 days of the filing of this Claim, as required by Supplemental Rule G(5)(b), and preserve all defenses and objections available to them.

48. This Claim is verified under penalty of perjury pursuant to 28 U.S.C. § 1746 by the individual verifications of the Swinney Claimants and their duly appointed estate representatives attached as Exhibit C.

## PRAYER FOR RELIEF

WHEREFORE, the Swinney Claimants respectfully request that the Court: (a) recognize this Claim and the Swinney Claimants' asserted interest in the Defendant Property; (b) recognize that any such interest attaches to and continues against the corresponding proceeds or substitute res upon any interlocutory or final disposition of the Defendant Property; (c) deny forfeiture to the

United States to the extent of any interest ultimately established by the Swinney Claimants; and (d) grant such other and further relief as the Court deems just and proper.

Dated: September 29, 2026

Respectfully submitted,
/s/ J. Christopher Klotz
J. Christopher Klotz, Esq.
D.C. Bar No. 439409
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel: (850) 202-1010
Fax: (850) 916-7449
Email: atteam@awkolaw.com

*Counsel for the Swinney Claimants*

**CERTIFICATE OF SERVICE**

I certify that on September 29, 2026, the foregoing *Swinney Claimants'* Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture In Rem, together with its exhibits, was filed with the Clerk of Court through the CM/ECF system, which will serve notice on all counsel of record.

I further certify that, in accordance with Supplemental Rule G(5)(a)(i)(D), a true and correct copy was served by electronic mail upon counsel for the United States: Assistant United States Attorney Rajbir Datta at Rajbir.Datta@usdoj.gov; Sean Heiden, Acting Deputy Chief, National Security Division, at Sean.Heiden2@usdoj.gov; and Joshua L. Sohn, Trial Attorney, Money Laundering and Asset Recovery Section, at Joshua.Sohn@usdoj.gov.

*/s/ J. Christopher Klotz*
J. Christopher Klotz