**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20530<br><br>Plaintiff,<br><br>v.<br>IN THE MATTER OF THE SEIZURE OF THE M/T PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD<br><br>Defendant *in rem*. | Civil Action No. 1:26-CV-01405<br><br>**JURY TRIAL DEMANDED** |

**IRANIAN TERRORISM VICTIMS' ANSWER TO UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Pursuant to Rule G(5)(b) of the Federal Rules of Civil Procedure, the Iranian Terrorism Victims hereby answer the government's Verified Complaint *In Rem*, dated April 24, 2026 (ECF No. 1), as follows:

**NATURE OF THE ACTION AND DEFENDANT *IN REM***

1. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 1; except, deny that the United States has any right, title or interest in the Defendant Motor Tanker PHONIX bearing International Maritime Number ("IMO") 9198317 (hereinafter, "PHONIX"), together with the oil cargo laden on the PHONIX (together, with the PHONIX, the "Defendant Property") that is superior to the right, title or interest of the Iranian Terrorism Victims in the Defendant Property.

2. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 2; except admit that the PHONIX was seized by U.S. authorities while

laden with cargo.

## JURISDICTION AND VENUE

3. Paragraph 3 contains jurisdictional and legal conclusions to which no response is required. To the extent a response is required, the Iranian Terrorism Victims admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1333, 1345, and 1355.

4. Paragraph 4 contains legal conclusions regarding venue to which no response is required. To the extent a response is required, the Iranian Terrorism Victims admit that venue is proper in this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5. Paragraph 5 contains legal conclusions to which no response is required. To the extent a response is required, the Iranian Terrorism Victims admit that this Court may exercise jurisdiction pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. §§ 2461(b) and 1333(1). The Iranian Terrorism Victims lack knowledge sufficient to admit or deny whether the acts and omissions giving rise to the alleged forfeiture occurred on the high seas.

## FACTS GIVING RISE TO FORFEITURE

### A. Relevant Entities

#### a. Government of Iran

6. Paragraph 6 purports to quote from a document or documents that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those documents for their contents and deny any characterization of those documents that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 6; except, on information and belief, admit that Iran was designated as a state sponsor of terrorism on January 19, 1984, and has not been delisted.

**b. Iranian Ministry of Petroleum**

7. Paragraph 7 purports to quote from a website that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to the website for its contents and deny any characterization of the website that is inconsistent with its contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 7; except, on information and belief, admit that the Iranian Ministry of Petroleum is a state-run organ of the Iranian government with oversight over the Iranian oil industry.

8. Paragraph 8 purports to quote from a document or documents that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those documents for their contents and deny any characterization of those documents that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 8.

9. Paragraph 9 purports to quote from a document or documents that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those documents for their contents and deny any characterization of those documents that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 9.

10. Paragraph 10 purports to quote from a webpage that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to that webpage for its contents and deny any characterization of the webpage that is inconsistent with its contents. To the extent that a response is required, the Iranian Terrorism Victims admit, on information and belief, that OFAC designated the Iranian Ministry of Petroleum under Executive Order 13,224 in October 2020 for

providing financial support to the IRGC-QF.

**c. Islamic Revolutionary Guard Corps**

11. On information and belief, the Iranian Terrorism Victims admit the allegations in Paragraph 11.

12. Paragraph 12 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims admit, on information and belief, that the Department of the Treasury made the findings referenced in Paragraph 12.

13. Paragraph 13 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 13; except, on information and belief, the Iranian Terrorism Victims admit that the IRGC and IRGC-QF use a network of shipping companies and front companies to hide their involvement in the sale and shipment of Iranian oil, and that holding groups and companies in the petrochemical sector provide financial lifelines to the IRGC.

14. Paragraph 14 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge

sufficient to admit or deny the allegations in Paragraph 14.

15. Paragraph 15 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 15; except, on information and belief, the Iranian Terrorism Victims admit that the IRGC uses the proceeds from the distribution of petroleum products to fund its terror activities.

16. Paragraph 16 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent that a response is required, on information and belief, the Iranian Terrorism Victims admit the allegations in Paragraph 16 including that OFAC designated the IRGC-QF under Executive Order 13,224 in October 2007.

17. Paragraph 17 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 17; except, admit that in April 2019 the President announced that he would designate the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1189).

18. Paragraph 18 purports to quote from a webpage or webpages that speak for

themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 18; except, on information and belief, the Iranian Terrorism Victims admit that the IRGC was responsible for planning the attack on the Khobar Towers in Dhahran, Saudi Arabia, during which 19 U.S. Air Force personnel were killed and more than 350 were injured.

19. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 19.

**d. National Iranian Oil Company**

20. Paragraph 20 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 20; except, on information and belief, the Iranian Terrorism Victims admit that NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Oil, and that according to OFAC, the distribution of NIOC oil helps to finance Iran's IRGC-QF and its terrorist proxies.

21. Paragraph 21 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 21; except, on information and belief, the

Iranian Terrorism Victims admit that Treasury determined NIOC was an agent or affiliate of the IRGC and that OFAC designated NIOC pursuant to Executive Order 13,224 in October 2020.

**e. Iranian Oil Terminals Company**

22. Paragraph 22 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those websites for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 22.

**f. Kharg Oil Terminal**

23. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 23.

24. Paragraph 24 refers to a website that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to that website for its contents and deny any characterization of the website that is inconsistent with its contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 24.

**g. Jask Oil Terminal**

25. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 25.

**h. National Iranian South Oil Company**

26. Paragraph 26 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge

sufficient to admit or deny the allegations in Paragraph 26.

**i. M/T PHONIX**

27. The Iranian Terrorism Victims admit, on information and belief, that the PHONIX is a crude oil tanker. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 27.

28. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 28.

29. Paragraph 29 refers to a website that speaks for itself and the Iranian Terrorism Victims respectfully refer the Court to that website for its contents and deny any characterization of the website that is inconsistent with its contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 29.

**j. Vision Ship Management LLP**

30. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 30.

31. Paragraph 31 purports to quote from a webpage or webpages that speak for themselves and the Iranian Terrorism Victims respectfully refer the Court to those webpages for their contents and deny any characterization of those webpages that is inconsistent with their contents. To the extent a response is required, the Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 31; except, on information and belief, the Iranian Terrorism Victims admit that OFAC designated Vision on December 3, 2024, and that the vessel currently known as the PHONIX was identified as blocked property in which Vision had an interest.

32. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the

allegations in Paragraph 32.

33. The Iranian Terrorism Victims admit, on information and belief, that the PHONIX has a history of engaging in business with sanctioned entities and exhibiting behaviors employed by the ghost fleet. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the remaining allegations in Paragraph 33.

**B. AIS Spoofing**

34. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 34.

35. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 35.

36. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 36.

37. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 37.

**C. Historical Iran-Related Voyages by the PHONIX**

38. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 38 and Footnotes 2 and 3.

**a. The PHONIX's Late 2025 Shipment of Iran-Origin Oil**

39. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 39.

40. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 40.

41. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the

allegations in Paragraph 41.

42. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 42.

**b. The PHONIX's Early 2026 Shipment of Iran-Origin Oil**

43. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 43.

44. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 44.

**c. The PHONIX's Current Voyage**

45. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 45.

46. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 46 and Footnote 4.

47. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 47.

48. The Iranian Terrorism Victims lack knowledge sufficient to admit or deny the allegations in Paragraph 48.

**COUNT ONE – FORFEITURE**
**18 U.S.C. § 981(a)(1)(G)(i)**

49. The Iranian Terrorism Victims incorporate by reference their responses to Paragraphs 1 to 48 above and deny that the authority referenced in Paragraph 49 confers on the United States any right, title or interest in the Defendant Property that is superior to the right, title or interest of the Iranian Terrorism Victims in the Defendant Property.

50. The Iranian Terrorism Victims admit that the IRGC, including the IRGC-QF,

is a designated foreign terrorist organization.

## AFFIRMATIVE DEFENSES

The defenses asserted herein are based on the Iranian Terrorism Victims' knowledge, information, and belief at this time. The Iranian Terrorism Victims specifically reserve the right to assert additional affirmative defenses and other defenses and/or modify, amend, or supplement any defense contained herein at any time. Without admitting any of the facts alleged in the Complaint except as specifically set forth above, and without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of the government's claims, the Iranian Terrorism Victims assert the following affirmative and other defenses:

1. The Iranian Terrorism Victims possess an interest in the Defendant Property.

2. The Iranian Terrorism Victims possess an interest in the Defendant Property that is superior to the government's claim pursuant to TRIA, Pub. L. No. 107-297, § 201(a) (2002) (codified at 28 U.S.C. § 1610 Note), notwithstanding the instant civil forfeiture action.[1]

3. The Defendant Property, that is, the PHONIX and its cargo, constitutes a "blocked asset" under TRIA, by virtue of Executive Order 13,224, 66 Fed. Reg. 49079 (Sept. 23, 2001), as amended by Executive Order 13,886, 84 Fed. Reg. 48041 (Sept. 9, 2019), under authorities of IEEPA.

4. The Iranian Terrorism Victims are entitled to attach and execute upon the

---

[1] The Terrorism Risk Insurance Act ("TRIA") provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment[s] to the extent of any compensatory damages." Pub. L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (2002), codified at 28 U.S.C. § 1610 Note. Accordingly, TRIA overrides "the civil forfeiture statute." *See Est. of Levin v. Wells Fargo Bank*, N.A., 156 F.4th 632, 643 n.1 (D.C. Cir. 2025).

Defendant Property, that is, the PHONIX and its cargo, because each element required to establish their interest under TRIA has been satisfied. Specifically, the Iranian Terrorism Victims hold final, enforceable judgments for compensatory damages against the Islamic Republic of Iran—a terrorist party—based on an act of terrorism; the Defendant Property, that is, the PHONIX and its cargo are blocked under the International Emergency Economic Powers Act including through Executive Orders issued thereunder; and the Defendant Property, that is, the PHONIX and its cargo were owned or operated for the benefit of Iran's agencies or instrumentalities.

5. The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Because of their claim under TRIA, the Iranian Terrorism Victims have a property interest in the Defendant Property, that is, the PHONIX and its cargo governed by the Fifth Amendment. As a result, forfeiting the PHONIX and its cargo to the government without "due process of law" as to the Iranian Terrorism Victims' TRIA claims would violate the Iranian Terrorism Victims' rights under the Fifth Amendment.

6. The Fifth Amendment also provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Because of the Iranian Terrorism Victims' property interest in the Defendant Property, that is, the PHONIX and its cargo, forfeiting that property to the government would result in a taking of Iranian Terrorism Victims' property without just compensation.

7. To the extent the Defendant Property, that is, the PHONIX and its cargo are not required to be transferred to the Iranian Terrorism Victims, they are required to be deposited into the United States Victims of State Sponsored Terrorism Fund. *See* 34 U.S.C. § 20144(e)(2)(A).

8. The Defendant Property should be placed into a constructive trust for the benefit

of all claimants.

9. The forfeiture of the Iranian Terrorism Victims' interests in the Defendant Property, that is, the PHONIX and its cargo would violate the Excessive Fines clause of the Eighth Amendment.

10. The Iranian Terrorism Victims deny all allegations not expressly admitted herein and specifically reserve the right to amend this Answer, to raise additional defenses, cross-claims, and third-party claims not asserted herein as may be warranted by the revelation of information during further proceedings, and to pursue alternative remedies under civil forfeiture law.

11. The Iranian Terrorism Victims incorporate by reference any defense that any other claimant pleads in this action, to the extent the defense applies to any claims against the PHONIX or its cargo, in whole or in part.

## CROSS-CLAIMS & COUNTERCLAIMS

The Iranian Terrorism Victims assert the following cross-claims and counterclaims (the "TRIA Claims") against the United States and all other claimants asserting an interest in the PHONIX and its cargo who appear in this action. Therein, the Iranian Terrorism Victims seek a declaration that, as a matter of federal law, their claims are entitled to priority over all competing claims for the purpose of attachment and execution, including but not limited to competing forfeiture claims, terrorism judgment creditors, execution creditors, and non-TRIA claimants, and allege as follows:

1. This Court has jurisdiction over the TRIA Claims pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Supplemental Rule G.

2. Venue is proper in this District because the TRIA Claims are ancillary to, and arise from, the same proceeding pending before this Court.

3. The Iranian Terrorism Victims are judgment creditors of the Islamic Republic of Iran, holding final, unsatisfied judgments for damages arising from acts of state-sponsored terrorism.

4. The defendants to the TRIA Claims include the United States and all other parties who assert any legal, equitable, possessory, property, or contingent interest in the Defendant Property.

5. The TRIA Claims are asserted for the limited purpose of preserving the Iranian Terrorism Victims' priority rights and do not seek adjudication of priority until the universe of legally permissible claimants in this action is established.

6. Through the TRIA Claims, the Iranian Terrorism Victims do not assert any cause of action against the United States, or any foreign sovereign, other than execution against blocked assets as specifically permitted and authorized by TRIA, as set forth herein.

7. The Iranian Terrorism Victims have timely filed a Verified Claim in this action and either obtained or are pursuing judicial authorization under 28 U.S.C. § 1610(c) to execute on their judgments.

8. The Defendant Property constitutes blocked assets of Iran and/or its agency or instrumentality, and is therefore subject to attachment and execution by the Iranian Terrorism Victims pursuant to TRIA § 201.

9. Multiple parties now assert competing interests in the PHONIX and its cargo, including the United States, other terrorism judgment creditors, and non-TRIA claimants.

**PRIORITY UNDER TRIA § 201**

1. The Iranian Terrorism Victims restate and reallege the foregoing Paragraphs as if fully set forth herein.

2. TRIA § 201(a) provides that, "[n]otwithstanding any other provision of law," blocked assets of a terrorist party or its agency or instrumentality shall be subject to execution by holders of terrorism judgments.

3. TRIA's "notwithstanding" clause preempts inconsistent state and federal law, overrides competing claims not grounded in TRIA, and elevates qualifying terrorism judgment creditors over all non-TRIA claimants.

4. Federal courts have consistently recognized that TRIA creates a priority execution regime favoring holders of terrorism judgments over competing non-TRIA claimants.

5. Accordingly, even if competing claimants satisfy federal forfeiture and/or state-law execution or attachment requirements, their claims are subordinate to the Iranian Terrorism Victims' TRIA Claims.

**DECLARATORY RELIEF**

1. The Iranian Terrorism Victims restate and reallege the foregoing Paragraphs as if fully set forth herein.

2. An actual and justiciable controversy exists concerning the relative priority of the parties' interests in the PHONIX and its cargo.

3. The Iranian Terrorism Victims seek a declaration as to the PHONIX and its cargo that: (i) the Iranian Terrorism Victims hold priority rights for attachment and execution purposes; (ii) any competing executions and/or attachments are subordinate to Iranian Terrorism Victims' TRIA Claims; and (iii) any distribution of the PHONIX and its cargo must respect that priority.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b) and Rule G(9) of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Iranian Terrorism Victims demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, the Iranian Terrorism Victims respectfully request that the Court:

1. Enter judgment in their favor and against all other claimants in this action.

2. Order that the PHONIX and its cargo be released from custody and returned to the Iranian Terrorism Victims.

3. Declare the Iranian Terrorism Victims' interests have priority over other parties for attachment and execution purposes under TRIA § 201, FSIA § 1610, and all other applicable federal laws.

4. Declare that any competing executions, attachments, liens, or asserted interests are subordinate to the Iranian Terrorism Victims' rights for attachment and execution purposes.

5. In the alternative, and only if the Court determines that the PHONIX and its cargo, or any portion thereof, are not lawfully subject to attachment and execution by the Iranian Terrorism Victims, the Court should declare that any forfeiture, remission, or other disposition of such assets must be deposited into the United States Victims of State Sponsored Terrorism Fund pursuant to the statutory scheme set forth in 34 U.S.C. § 20144(e), and that no disposition inconsistent with that statutory framework may occur.

6. For attorneys' fees and the costs of suit, including pursuant to 28 U.S.C. § 2465.

7. Grant the Iranian Terrorism Victims such other and further relief as the Court deems just and proper.

Dated: October 9, 2026

Respectfully submitted,

**CROWELL & MORING LLP**

*<u>/s/ Aryeh S. Portnoy</u>*
Aryeh S. Portnoy, D.C. Bar No. 464507
John L. Murino, D.C. Bar No. 484818
Michael Williams, D.C. Bar No. 90006255
600 5th Street N.W.
Washington, D.C. 20001
(202) 624-2500

*Attorneys for Claimants Iranian Terrorism Victims*