**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR TANKER PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD,<br><br>Defendants In Rem. | ) | Civil Action No. 1:26-cv-01405-SLS<br>Judge Sparkle L. Sooknanan |

**SWINNEY CLAIMANTS' OPPOSED MOTION TO CONFIRM TIMELINESS OF VERIFIED CLAIM AS TO PETROLEUM CARGO AND TO SET A DIFFERENT FILING TIME AS TO M/T PHONIX AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

The *Swinney Claimants* respectfully move under Supplemental Rule G(5)(a)(ii) and Federal Rule of Civil Procedure 6(b)(1)(B) for an order (1) confirming that their September 29, 2026 Verified Claim (ECF No. 26) was filed within the publication-based claim period applicable to the petroleum cargo aboard the M/T PHONIX (the "Cargo"), and (2) for good cause, or alternatively on a finding of excusable neglect, setting September 29, 2026 as the filing time for the same Verified Claim solely insofar as it concerns the M/T PHONIX vessel (the "Vessel"). In the alternative, and only if the Court concludes that the Vessel's September 18, 2026 deadline also governed the Cargo, the *Swinney Claimants* ask the Court to set September 29, 2026 as the filing time for the Verified Claim in its entirety. Apart from that alternative request, this motion does not seek an extension for the Cargo, a determination of lien priority, or adjudication of ultimate standing to contest forfeiture.

The United States separately published notice of the Vessel beginning July 20, 2026 and of the Cargo beginning August 25, 2026, but did not file its two declarations of publication in this action until September 25, 2026 (ECF Nos. 21-1, 21-2). The Vessel period began running on July 20, 2026, when, under the Court's July 8, 2026 Order, every filing in this action, including the

Complaint, remained under seal. ECF No. 10. Counsel for *Swinney* first learned of the separate publication schedules on or about October 1, 2026, when a member of counsel's staff reviewed ECF No. 21 and alerted counsel, after the Verified Claim had been filed. See Declaration of J. Christopher Klotz ("Klotz Decl.") ¶¶ 6, 9 (Exhibit A); Declaration of William H. Stranahan ("Stranahan Decl.") ¶¶ 8–9 (Exhibit B). Swinney filed its verified claim for both assets on September 29, four days after ECF No. 21 was docketed. Its claim was within the Cargo period and eleven days beyond the Vessel period. The Court should preserve the timely Cargo claim and exercise the discretion expressly afforded by Rule G (and, if necessary, Rule 6(b)(1)(B)) to allow the same existing claim as to the Vessel.

## LOCAL CIVIL RULE 7(m) STATEMENT

Pursuant to LCvR 7(m), on October 1, 2026, counsel for the Swinney Claimants requested the United States' position on the proposed relief. On October 13, 2026, Assistant United States Attorney Rajbir Datta responded that the United States would not consent to extending the claim-filing time for an "unsecured creditor" and would oppose any "good cause" extension. The motion is OPPOSED.

## RELEVANT BACKGROUND

1. The Government filed the verified forfeiture complaint on April 24, 2026, naming the M/T PHONIX and all petroleum product onboard together as defendant property. ECF No. 1.

2. The case was sealed upon the Government's motion, and the Court ordered it to remain sealed. ECF Nos. 2, 4. On July 8, 2026, the Court directed the Clerk to unseal the action but to maintain "all filings, minute orders, and minute entries" under seal. ECF No. 10. Not until its July 31, 2026 Minute Order did the Court direct the Clerk to unseal all documents and minute orders other than ECF Nos. 3-1, 7-1, 11-3, and 11-4. Min. Order (July 31, 2026). The docket reflects that the Clerk replaced the main documents of the Complaint and several other early filings on August 10, 2026. See ECF No. 1 (docket text).

3. In July 2026, the Government missed three Court-ordered deadlines (July 15, July 22, and July 27), and the Court issued an order to show cause on July 29. On July 31, the Court discharged that order, citing "administrative difficulties experienced by the United States" in submitting its filings. See Min. Orders (July 20, 29, and 31, 2026).

4. The Government's notice for the Vessel, identified as asset 26-FBI-003170, states first publication on July 20, 2026 and a 60-day claim period. ECF No. 21-1 at 2. That publication-based period expired September 18, 2026. The notice identifies only the Vessel, described as seized from Faith Enterprise Ltd, and does not mention the Cargo; the declaration of publication was executed on August 20, 2026. ECF No. 21-1 at 1–2. The separate notice for the Cargo, asset 26-FBI-003173, identifies first publication on August 25, 2026 and a 60-day claim period. ECF No. 21-2 at 2. Applying Federal Rule of Civil Procedure 6(a)(1)(C) to that period, the deadline falls on October 26, 2026, because the sixtieth day falls on Saturday, October 24, 2026. The Government thus noticed the Cargo as a separate asset with its own claim period. The Cargo declaration of publication was executed on September 24, 2026. ECF No. 21-2 at 1. Neither notice states a calendar deadline, and neither mentions Iran, the IRGC, or any basis for forfeiture beyond citing 18 U.S.C. § 981. ECF No. 21-1 at 2; ECF No. 21-2 at 2.

5. Although the advertisements ran on forfeiture.gov beginning in July and August respectively, the Government did not docket the declarations identifying both publication schedules until September 25, 2026. ECF No. 21. The Vessel period had already expired seven days earlier. The Vessel declaration of publication had been executed on August 20, 2026, and the Cargo declaration on September 24, 2026. ECF No. 21-1 at 1; ECF No. 21-2 at 1. The Court had directed the Government to report on "its efforts to provide notice under Supplemental Rule G," Min. Order (July 31, 2026), but the Government's status reports described only direct-notice mailings and did not mention the forfeiture.gov postings. ECF Nos. 13, 15. On September 8, 2026, ten days before the Vessel period expired by the Government's present computation, the Government advised the Court that "any potential claimants have until September 28, 2026 to file a claim," a date that appears to track the 35-day direct-notice period running from its August 24 mailings. ECF No. 15 at 2; *see* ECF No. 13 at 1; Fed. R. Civ. P. Supp. R. G(4)(b)(ii)(B).

6. Counsel for the *Swinney Claimants* identified this action on or about August 24, 2026, and a designated staff member began monitoring the docket the next day. Klotz Decl. ¶¶ 2–3; Stranahan Decl. ¶¶ 2, 5. Counsel did not know that the Government had advertised the Vessel and the Cargo separately, on two different dates, until a member of counsel's staff reviewed ECF No. 21 and alerted counsel on or about October 1, 2026, after the Verified Claim was filed; the Government had docketed it on September 25. Klotz Decl. ¶¶ 6, 9; Stranahan Decl. ¶¶ 8–9. Counsel also did not review ECF No. 15 before the Verified Claim was filed. Klotz Decl. ¶ 11;

Stranahan Decl. ¶ 10. The *Swinney* Claimants did not receive direct notice under Rule G(4)(b); the Government's status reports identify as notice recipients only the Cargo's purported owners and the Vessel's purported owner and managers. ECF No. 13 at 1; ECF No. 15 at 1; *see* Klotz Decl. ¶ 5; Stranahan Decl. ¶ 6. On September 29, 2026, the Swinney Claimants filed its Verified Claim expressly encompassing the Vessel and Cargo. ECF No. 26.

7. ECF No. 26 includes the final judgment against Iran, an order under 28 U.S.C. § 1610(c), judgment balances, and verification/probate exhibits. The Verified Claim asserts its principal interest in the Cargo, which it alleges is property of Iran or its agencies or instrumentalities and a blocked asset, and a further interest in the Vessel "on the basis and subject to the qualifications" it states. ECF No. 26 ¶¶ 4, 11–33. *The Swinney Claimants have not obtained* a writ of attachment or execution against the Vessel or Cargo and does not, for purposes of this motion, contend that the judgment or § 1610(c) order, standing alone, perfects a lien on either asset. The *Swinney* Claimants reserve all arguments regarding their interests in the Vessel and Cargo, including under Section 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, tit. II, § 201, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note) ("TRIA").

8. Under Supplemental Rule G(5)(b), the Swinney Claimants' answer or Rule 12 motion is due October 20, 2026. The Verified Claim states that the Swinney Claimants will file their answer or Rule 12 motion within that period, ECF No. 26 ¶ 47, and the relief requested here does not depend on any extension of that deadline.

## ARGUMENT

### I. Rule G and Rule 6(b)(1)(B) authorize the Court to accept the Vessel portion of the Verified Claim.

9. Supplemental Rule G(5)(a)(ii) provides that a claimant must file by the applicable notice-based deadline "[u]nless the court for good cause sets a different time." Fed. R. Civ. P. Supp. R. G(5)(a)(ii). When notice is published but direct notice is not sent to the claimant or the claimant's attorney, the claim is due no later than 60 days after the first day of publication on an official internet government forfeiture site. *Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B). The Swinney Claimants recognize* that posting to the official website may start the period without contemporaneous docketing of a declaration of publication. They rely on the particular sequence here as a reason to

exercise the Court's expressly reserved discretion, not as an assertion that the Government's publications were automatically ineffective, and it reserves all rights regarding the Government's compliance with Rule G(4). The Swinney Claimants do not contend that TRIA displaces Rule G(5)'s claim deadline; they ask the Court to exercise the discretion Rule G itself provides.

10. Although compliance with the claim deadline is generally required, courts applying Rule G and its predecessor, Supplemental Rule C(6), retain discretion in appropriate circumstances to depart from it, and courts in this District have exercised that discretion. See *United States v. $83,686.00 in U.S. Currency Seized from SunTrust Account No. 1000018120112*, 498 F. Supp. 2d 21, 24 (D.D.C. 2007) (declining to strike an untimely verified claim after considering notice, good faith, prejudice, and the interests of justice); see also *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (noting, in discussing Rule C(6)'s answer requirement, that strict compliance is typically required but that a court has a discretion in appropriate circumstances to depart from it). Because that inquiry is equitable, courts weigh the circumstances of the particular case, including whether the government would be prejudiced, whether the government complied with the applicable procedural rules, and the claimant's good faith. See *United States v. Borromeo*, 945 F.2d 750, 753–54 (4th Cir. 1991) (reversing denial of leave to file a verified claim out of time and identifying prejudice to the government as among the most important considerations). Those considerations favor the limited relief requested here, as explained below.

11. The same result follows under Federal Rule of Civil Procedure 6(b)(1)(B), which allows the Court, on motion made after a deadline has passed, to extend it where the movant "failed to act because of excusable neglect." The Civil Rules apply in forfeiture actions except to the extent they are inconsistent with the Supplemental Rules, Fed. R. Civ. P. Supp. R. A(2); *Amiel*, 995 F.2d at 371, and Rule G invokes them where it is silent, Fed. R. Civ. P. Supp. R. G(1). Courts have applied the excusable-neglect framework to late forfeiture claims. *See Borromeo*, 945 F.2d at 753–54 (applying the predecessor to Rule 6(b)(1)(B)). That framework is equitable, can reach late filings caused by inadvertence, mistake, or carelessness, and looks to the danger of prejudice to the opposing party, the length of the delay and its potential effect on the proceedings, the reason for the delay (including whether it was within the movant's reasonable control), and the movant's good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Whether the request is analyzed as good cause under Rule G(5)(a)(ii) or as excusable neglect under Rule 6(b)(1)(B), the same considerations, addressed in Part III, support relief here.

**II. The Verified Claim was timely as to the Cargo; the requested extension concerns the Vessel and, only in the alternative, the Cargo.**

12. Although the complaint names the Vessel and onboard petroleum together, the Government issued separate advertisements with separate FBI asset identifiers and distinct first-publication dates. ECF No. 21-1 at 2 (Vessel: July 20); ECF No. 21-2 at 2 (Cargo: August 25). The September 29 Verified Claim was filed 27 days before the October 26 Cargo deadline. Accordingly, no extension of the Cargo period is necessary. The Government itself chose to notice the Cargo separately, with its own asset number and its own first-publication date, and it cannot fairly treat the earlier Vessel date as the deadline for an asset it noticed later. The July 20 notice describes only the Vessel and says nothing about the Cargo, ECF No. 21-1 at 2, and Rule G requires a notice to describe the property with reasonable particularity, Fed. R. Civ. P. Supp. R. G(4)(a)(ii)(A). Conversely, the Vessel period ended September 18, eleven days before the same Verified Claim was filed. The Court can address the discrete Vessel delay without treating the otherwise timely Cargo claim as late. The *Swinney Claimants* do not seek leave to refile or amend for ECF No. 26. The September 29 filing date is undisputed. The question is how that single filing fares against the independently applicable claim period for each separately advertised asset: it was timely as to the Cargo, and, insofar as it concerns the Vessel, the question is whether good cause warrants setting a different time under Supplemental Rule G(5)(a)(ii).

13. The Government may contend that, because the Complaint defines the Vessel and its cargo collectively as the "Defendant Property," ECF No. 1 at 1, the July 20 publication started one claim period for both. The Court need not accept that contention, which cannot be squared with the Government's own separate notices. But if the Court does, the *Swinney* Claimants respectfully request, in the alternative, that the Court set September 29, 2026 as the filing time for the Verified Claim as to the Cargo as well. Every consideration discussed in Part III applies at least as strongly to the Cargo, for which the Government's own notice identified a first-publication date of August 25, 2026. ECF No. 21-2 at 2.

**III. The sealing history, the Government's inconsistent statements of the claim timetable, the timing of its publication filings, the short delay, counsel's prompt action, and the absence of prejudice support relief.**

14. Several circumstances bear on the equities of the short delay. The Vessel period began on July 20, 2026, while every filing in this action, including the Complaint, remained under seal by order of the Court. ECF No. 10. The filings were not unsealed until July 31, 2026, and the docket reflects that the Clerk replaced the main documents of the Complaint and several other early filings on August 10, 2026. The *Swinney* Claimants do not contend that sealing prevented them from learning of this action; counsel's office identified it on or about August 24, 2026. Klotz Decl. ¶ 2; Stranahan Decl. ¶ 2. The sealing history bears instead on the Government's own handling of this case and on the circumstances in which its first notice issued. The Government's status reports also gave the Court dates keyed to its direct-notice mailings rather than the publication-based dates later disclosed in ECF No. 21: two-week notice periods ending September 4 and 7, ECF No. 13 at 1, and a claim date of September 28, ten days after the Vessel period the Government now invokes, ECF No. 15 at 2. The *Swinney* Claimants do not contend that they relied on ECF No. 15, which counsel did not review before filing, Klotz Decl. ¶ 11; Stranahan Decl. ¶ 10, or that the Government intended to mislead anyone. The point is narrower: the Government's own docketed accounts of the claim timetable were inconsistent with one another and with the September 18 date it now invokes, which bears on the equities. Meanwhile, the Government's own filings in July were delayed, and the Court discharged its show-cause order in light of the "administrative difficulties experienced by the United States." Min. Order (July 31, 2026). Courts consider whether the government complied with the applicable procedural rules. *Borromeo*, 945 F.2d at 753. A sequence in which filings were sealed, the publication period began before they were unsealed, the Government's reports gave later claim dates, and the publication filings were docketed only after the Vessel period had run is a sound reason to exercise the Court's discretion.

15. The notices themselves also did not tie the two assets together or identify the property as Iranian. The July 20 notice identifies only the Vessel (asset 26-FBI-003170), described as seized from Faith Enterprise Ltd, and does not mention the Cargo; the August 25 notice separately identifies the Cargo (asset 26-FBI-003173). ECF No. 21-1 at 2; ECF No. 21-2 at 2. Neither states a calendar deadline, and neither mentions Iran, the IRGC, or any basis for forfeiture beyond citing 18 U.S.C. § 981. Id.

16. Beginning on or about August 25, 2026, a designated member of counsel's staff monitored this action's docket. Klotz Decl. ¶¶ 3–4; Stranahan Decl. ¶ 5. After identifying the action, counsel's office also began preparing the Verified Claim, collecting judgment documentation and claimant verifications. Klotz Decl. ¶ 7; Stranahan Decl. ¶ 4. The *Swinney* Claimants acknowledge that counsel did not review ECF No. 15 before the Verified Claim was filed. Klotz Decl. ¶ 11; Stranahan Decl. ¶ 10. The staff member responsible for monitoring the docket overlooked that status report. Stranahan Decl. ¶ 10. Counsel also did not know, before the Verified Claim was filed, that the Government had advertised the Vessel and the Cargo separately on forfeiture.gov, on two different dates. ECF No. 21, which the Government filed on September 25, was the first filing to disclose that fact, and it was docketed seven days after the Vessel deadline. Counsel learned of the separate publication dates on or about October 1, 2026, when a member of counsel's staff reviewed that filing and alerted counsel, after the Verified Claim had been filed. Counsel requested the Government's position that day and, after the Government responded on October 13, brought this motion. Klotz Decl. ¶¶ 6, 9–10; Stranahan Decl. ¶¶ 8–9. The Verified Claim, filed September 29, already encompassed both the Vessel and the Cargo. The resulting Vessel delay was eleven days, not a prolonged or unexplained failure to participate. *Cf. Levin v. United States*, No. 17-3342, 774 F. App'x 490 (2d Cir. Aug. 9, 2019) (summary order) (terrorism-judgment creditors' claim untimely under Rule G(5) where they offered no compelling reason to excuse a five-year delay; declining to read TRIA § 201's "notwithstanding" clause to extend to a claim for a distribution of property seized by the Government). These facts support a case-specific extension, particularly because the same filing was timely as to the companion Cargo asset. There is also no danger of prejudice. This action is at an early stage: claims have only recently been filed, the Government has not moved to strike any claim, no scheduling order has issued, and the Government has withdrawn, for now, its request for an interlocutory sale. ECF No. 15 at 2. As relayed to counsel, the Government's stated objection goes to the category of claimant, not to any harm from the timing of the claim. The Verified Claim was verified by the claimants under penalty of perjury and served on the Government's counsel by email on the day it was filed. ECF No. 26 (Certificate of Service); Klotz Decl. ¶ 8. Although the absence of identified prejudice is not itself an entitlement to an extension, it supports good cause when considered together with the limited delay, counsel's prompt action after learning of the separate publication schedules, and the Government's inconsistent statements of the claim timetable.

17. The Verified Claim has placed the Government and participating claimants on notice of the *Swinney Claimants*' asserted interests in the specific defendant property. A different filing time would require no new claim and, on the record presently available, no change to the Government's publication program. The *Swinney Claimants* seek a limited good-cause adjustment under Supplemental Rule G(5)(a)(ii) or alternatively, Rule 6(b)(1)(B). This request rests on the separate publication schedules, the sealing history, the timing of the Government's filing of its declarations of publication, the Government's inconsistent statements of the claim timetable, the absence of prejudice, the short length of the delay, and counsel's prompt action after learning of the differing deadlines. The requested relief would preserve consideration of the Vessel interest without prejudicing the Government's ability to contest the merits of that interest.

**IV. The Government's "unsecured creditor" objection raises a separate question from the narrow timing relief requested.**

18. The Government has said it opposes an extension for any "unsecured creditor." *The Swinney Claimants hold a final judgment* against Iran, the IRGC, and MOIS under 28 U.S.C. § 1605A and a § 1610(c) order, attached to ECF No. 26, and assert their interests in the Vessel and Cargo under TRIA § 201(a). ECF No. 26 ¶¶ 5–10, 34–37. Those documents are relevant to potential enforcement under TRIA § 201(a), but the Swinney Claimants do not, for purposes of this motion, contend that their judgments or § 1610(c) order, standing alone, give them a perfected lien on the Vessel or Cargo. See *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 638–41, 643 n.1 (D.C. Cir. 2025) (holding that OFAC's license authorizing forfeiture did not unfreeze the funds or make TRIA inapplicable, and observing that TRIA prevails over the civil-forfeiture statute where they conflict). Whether the Swinney Claimants can establish a specific cognizable property interest for purposes of standing in this in rem forfeiture proceeding is analytically distinct from whether good cause permits the Court to accept the Vessel portion of an existing verified claim eleven days beyond the notice period. That question is for a properly supported motion under Supplemental Rule G(8)(c), not for this one.

19. Recent authority in this District supports the conclusion that the Government's characterization does not resolve that question. In *United States v. All Petroleum-Product Cargo Aboard the Achilleas*, No. 21-0305 (PLF), 2026 WL 2618380, at *1 (D.D.C. Sept. 4, 2026), the

court denied the Government's motion to strike the verified claims of terrorism judgment creditors seeking recovery from Iranian oil cargo proceeds. The court agreed that holders of in personam judgments are ordinarily unsecured creditors who lack statutory standing under 18 U.S.C. § 983 and Supplemental Rule G(5), but it concluded that TRIA § 201(a)'s notwithstanding clause overrides the specific-interest requirement as an execution-related barrier, and that the claimants also had Article III standing based on a colorable TRIA claim. *See id.* at *5–9. Although the posture in *Achilleas* differs, because those claimants had previously sought writs of attachment that were quashed, its analysis shows that unsecured-creditor status does not necessarily foreclose the assertion of TRIA rights in a civil forfeiture proceeding. *But see United States v. Fifty-Three Virtual Currency Accounts*, No. 20-2227 (RC), 2025 WL 2732705, at *4 (D.D.C. Sept. 25, 2025) (judgment creditors of Hamas lacked standing to contest forfeiture). The *Achilleas* court distinguished that decision because the claimants there did not appear to have relied on *United States v. All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d 607 (7th Cir. 2015) or otherwise developed an argument based on their entitlements under TRIA. *Achilleas*, 2026 WL 2618380, at *8 n.6. The Verified Claim invokes TRIA § 201(a) and its "notwithstanding" clause. ECF No. 26 ¶¶ 34–37, 41. Because the Swinney Claimants' standing is at least colorable on that authority, particularly as to the Cargo, which the Government represents remains owned by the Iranian government, ECF No. 15 at 1 n.1; *see* ECF No. 26 ¶¶ 18–23, the Verified Claim should not be rejected as futile in resolving a timing motion.

20. The *Swinney Claimants* do not ask the Court on this motion to declare their interest superior to the United States or another claimant, to find that a writ has issued or lien has attached, or to decide Article III or statutory standing conclusively. Any order setting a different Vessel filing time may expressly preserve any properly raised challenge to standing, execution prerequisites, attachment, ownership, and priority, as the accompanying proposed order does. Such a limited ruling would not prejudge the substantive dispute.

## CONCLUSION

For these reasons, the *Swinney Claimants* request that the Court (1) recognize that ECF No. 26 was filed within the Cargo publication-based claim period, and (2) for good cause set September 29, 2026 as the applicable filing time under Supplemental Rule G(5)(a)(ii), or alternatively upon a finding of excusable neglect under Rule 6(b)(1)(B), only for the Vessel portion of that Verified Claim, without prejudice to subsequent litigation of standing or competing property interests. In the alternative, if the Court concludes that the September 18, 2026 deadline also governed the Cargo, the Court should set September 29, 2026 as the filing time for the Verified Claim in its entirety. And if the Court declines to rule on the Cargo question at this time, it should still address the Vessel deadline without making any adverse determination concerning the Cargo claim. A proposed order is submitted herewith. *See* LCvR 7(c).

Dated: October 19, 2026

Respectfully submitted,

/s/ J. Christopher Klotz
J. Christopher Klotz, Esq.
D.C. Bar No. 439409
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel: (850) 202-1010
Fax: (850) 916-7449
Email: atteam@awkolaw.com

*Counsel for the Swinney Claimants*

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2026, the foregoing *Swinney Claimants'* Opposed Motion to Confirm Timeliness of Verified Claim as to Petroleum Cargo and to Set a Different Filing Time as to M/T PHONIX was filed with the Clerk of Court through the CM/ECF system, which will serve notice on all counsel of record.

*/s/ J. Christopher Klotz*

J. Christopher Klotz