**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR TANKER PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD,<br><br>Defendants In Rem. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:26-cv-01405-SLS<br><br>Judge Sparkle L. Sooknanan |

**SWINNEY CLAIMANTS' ANSWER TO VERIFIED COMPLAINT FOR FORFEITURE IN REM**

The judgment creditors identified in Exhibit B to the Swinney Claimants' Verified Claim (ECF No. 26) (collectively, "Swinney Claimants" or "Claimants"), through counsel, answer the United States' Verified Complaint for Forfeiture *In Rem* (ECF No. 1) (the "Complaint") under Supplemental Rule G(5)(b). These responses are made on the information presently available, without waiving objections, rights, or arguments concerning standing, timeliness, the distinct Defendant Vessel and Defendant Cargo, the validity of forfeiture, or the effect of the Terrorism Risk Insurance Act of 2002 ("TRIA"). Claimants incorporate by reference their Verified Claim and its exhibits (ECF No. 26), including the statement of their interest in ¶¶ 11–37 of the Verified Claim.

Except to the extent expressly admitted, the allegations of the Complaint are denied. Where Claimants state that they lack knowledge or information sufficient to form a belief as to an allegation, that response operates as a denial under Federal Rule of Civil Procedure 8(b)(5). References to cited laws, agency materials, and public documents do not constitute admissions of contested factual inferences drawn from those materials.

The Complaint uses "Defendant Property" to refer collectively to the M/T PHONIX (IMO 9198317) and the oil cargo laden on it when it was seized. Claimants use that term for convenience in responding, and use "Defendant Vessel" and "Defendant Cargo" as defined in the Verified Claim. Claimants' use of the Complaint's collective term is not an admission that the Defendant Vessel and Defendant Cargo are a single res, were subject to a single claim deadline, or are subject to forfeiture on the same facts. Headings, unnumbered paragraphs, and the Complaint's prayer for relief are not allegations to which a response is required; to the extent a response is required, they are denied except as expressly admitted.

## RESPONSES TO NUMBERED ALLEGATIONS

**1.** Claimants admit, on information and belief, that the Complaint arises from an investigation by HSI and the FBI concerning the transportation and sale of Iranian oil products, and that the IRGC, including the IRGC-QF, is a designated foreign terrorist organization. Claimants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and deny them on that basis. Claimants do not concede the characterization of the Defendant Property as forfeitable.

**2.** Claimants admit, on information and belief, that the PHONIX was seized by U.S. authorities in April 2026 while laden with Iran-origin crude oil. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 2, including the identity of the owner and technical manager of the PHONIX and the precise quantity of cargo.

## JURISDICTION AND VENUE

**3.** The allegations state a legal conclusion to which no response is required. To the extent a response is required, admit that the Government invokes this Court's in rem jurisdiction under

28 U.S.C. §§ 1333, 1345, and 1355, and state that they do not contest that jurisdiction, but deny that jurisdiction alone establishes forfeiture or extinguishes Claimants' asserted interests.

**4.** The allegations state a legal conclusion to which no response is required. To the extent a response is required, Claimants do not contest venue, without conceding that the requirements for forfeiture have been established.

**5.** The allegations state legal conclusions to which no response is required. To the extent a response is required, Claimants admit that the Government invokes 14 U.S.C. § 522(a) and 28 U.S.C. §§ 2461(b), 1333(1), but deny any implication that these provisions independently resolve Claimants' interests.

## FACTS GIVING RISE TO FORFEITURE

### A. Relevant Entities

#### a. Government of Iran

**6.** Paragraph 6 quotes State Department materials that speak for themselves, and Claimants deny any characterization inconsistent with them. Claimants admit, on information and belief, that the United States designated Iran as a state sponsor of terrorism on January 19, 1984, and has not delisted Iran. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 6.

#### b. Iranian Ministry of Petroleum

**7.** Paragraph 7 quotes a website that speaks for itself, and Claimants refer the Court to that website for its contents and deny any characterization inconsistent with them. Claimants admit, on information and belief, that the Iranian Ministry of Petroleum is a state-run organ of the Iranian government that exercises authority over Iran's oil and gas industry through subsidiaries, including NIOC. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 7.

**8.** Paragraph 8 quotes Iran's constitution, which speaks for itself, and Claimants deny any characterization inconsistent with its text. Claimants admit, on information and belief, that Articles 44 and 45 of Iran's constitution treat Iran's oil and other natural resources as public wealth at the disposal of the Iranian government. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 8, including the accuracy of the quoted translation.

**9.** Paragraph 9 quotes Iran's Oil Law, which speaks for itself, and Claimants deny any characterization inconsistent with its text. Claimants admit, on information and belief, that under Iranian law the oil resources of Iran, and the facilities, equipment, and assets of the Ministry of Petroleum and its subsidiaries at home and abroad, belong to the Iranian government. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 9, including the accuracy of the quoted translation.

**10.** Paragraph 10 refers to a Treasury press release that speaks for itself, and Claimants deny any characterization inconsistent with it. Claimants admit, on information and belief, that on October 26, 2020, OFAC designated the Iranian Ministry of Petroleum under Executive Order 13224 for providing financial support to the IRGC-QF. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 10.

**c. Islamic Revolutionary Guard Corps**

**11.** Claimants admit, on information and belief, that the IRGC is a branch of the Iranian armed forces; that the IRGC is tasked with preserving the Islamic Republic of Iran; and that the IRGC-QF is a subdivision of the IRGC that trains and equips terrorist organizations operating outside Iran, including insurgent groups in Iraq. *See Swinney v. Islamic Republic of Iran*, No.

1:20-cv-2316 (ACR), ECF No. 63, at 5–6 (D.D.C. May 30, 2025). Claimants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 11.

**12.** Admit that the Complaint quotes a Treasury characterization of the IRGC's economic influence and holdings. Claimants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in those statements and deny on that basis.

**13.** Claimants admit, on information and belief, that Treasury and OFAC have publicly stated that the IRGC and IRGC-QF use networks of shipping companies, front companies, and intermediaries to conceal their involvement in the sale and shipment of Iranian oil. Claimants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and the matters asserted in the cited statements and deny them on that basis.

**14.** Claimants admit, on information and belief, that OFAC and Treasury have publicly made statements concerning revenue the IRGC derives from the sale of petroleum. Claimants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in those statements, including the quantities, proceeds, and dates alleged, and deny them on that basis.

**15.** Claimants admit, on information and belief, that OFAC, Treasury, and the Secretary of the Treasury have publicly stated that Iran's petroleum and petrochemical sectors are major sources of revenue for the Iranian regime and have linked those revenues to the IRGC and terrorism-related activities. Claimants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in the quoted statements as applied to the Defendant Property or otherwise and deny them on that basis.

**16.** Claimants admit, on information and belief, that on October 25, 2007, OFAC designated the IRGC-QF under Executive Order 13224, and that OFAC publicly stated that the IRGC-QF provides material support to the Taliban, Lebanese Hizballah, Hamas, Palestinian Islamic Jihad, and the PFLP-GC. Claimants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in that statement and deny them on that basis.

**17.** Claimants admit, on information and belief, that OFAC designated the IRGC under Executive Order 13224 on October 13, 2017, and that the Secretary of State designated the IRGC, including the IRGC-QF, a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act, with the designation published in the Federal Register on April 15, 2019, 84 Fed. Reg. 15,278. Claimants further admit, on information and belief, that the President and the Department of State made the public statements described in Paragraph 17. Claimants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in those statements and deny them on that basis.

**18.** Claimants admit, on information and belief, that Iran, including through the Qods Force, a subdivision of IRGC, provided material support to terrorist groups in Iraq, including by training them and supplying weapons use against US forces, and that those groups carried out attacks against United States servicemembers in Iraq, as this Court found in the opinion supporting the judgment on which the *Swinney* Claimants rely. *See* ECF No. 26 ¶¶ 5–6 & Ex. A; *Swinney v. Islamic Republic of Iran,* No. 1:20-cv-2316 (ACR), ECF No. 63, at 5-12, 27 (D.D.C. May 30, 2025). Claimants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 18, which derive from sources other than that opinion, and deny them on that basis.

**19.** Paragraph 19 states legal conclusions and characterizations regarding the effect of the IRGC and IRGC-QF conduct on foreign commerce, to which no response is required. To the extent a response is required, Claimants lack knowledge or information sufficient to form a belief as to those allegations, including any effect attributable to the Defendant Property, and deny them on that basis. Whether the alleged conduct satisfies the elements of 18 U.S.C. § 981(a)(1)(G)(i) is a legal question.

**d. National Iranian Oil Company**

**20.** Paragraph 20 quotes webpages that speak for themselves, and Claimants refer the Court to those webpages for their contents and deny any characterization inconsistent with them. Claimants admit, on information and belief, that NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Petroleum, that NIOC is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran, and that OFAC has stated that the distribution of NIOC oil helps finance the IRGC-QF and its terrorist proxies. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 20.

**21.** Claimants admit, on information and belief, that on September 24, 2012, the Department of the Treasury reported to Congress that it had determined that NIOC was an agent or affiliate of the IRGC, and that on October 26, 2020, OFAC designated NIOC pursuant to Executive Order 13224. The cited agency records speak for themselves, and Claimants deny any characterization inconsistent with them. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 21.

**e. Iranian Oil Terminals Company**

**22.** Paragraph 22 quotes websites that speak for themselves, and Claimants refer the Court to those websites for their contents and deny any characterization inconsistent with them. Claimants admit, on information and belief, that IOTC is a subsidiary of NIOC that operates the Kharg Oil Terminal at Kharg Island, Iran, and that the government of Iran is IOTC's ultimate owner. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 22.

**f. Kharg Oil Terminal**

**23.** Claimants admit, on information and belief, that the Kharg Oil Terminal is an oil terminal at Kharg Island, Iran, operated by IOTC, with quays or jetties for loading petroleum onto crude oil tankers. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 23.

**24.** Paragraph 24 refers to a website that speaks for itself, and Claimants refer the Court to that website for its contents and deny any characterization inconsistent with them. Claimants admit, on information and belief, that the Kharg Oil Terminal receives oil by pipeline from Iran's South Oilfields, which are operated by NISOC. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 24.

**g. Jask Oil Terminal**

**25.** Claimants admit, on information and belief, that the Jask Oil Terminal is an oil export terminal in Iran, east of the Strait of Hormuz, operated by IOTC. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 25, including the dates of the terminal's inauguration and first export.

**h. National Iranian South Oil Company**

**26.** Paragraph 26 quotes a webpage that speaks for itself, and Claimants refer the Court to that webpage for its contents and deny any characterization inconsistent with it. Claimants admit, on information and belief, that NISOC is a government-owned corporation under the direction of the Iranian Ministry of Petroleum and a subsidiary of NIOC. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 26.

**i. M/T PHONIX**

**27.** Admit that the vessel identified in this action is called the PHONIX and bears IMO number 9198317. Claimants lack knowledge sufficient to admit the build year and historical vessel names and deny those assertions on that basis.

**28.** Claimants admit, on information and belief, that the PHONIX claimed to fly the flag of Guyana and is not legitimately flagged in Guyana. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 28.

**29.** Claimants admit, on information and belief, that news organizations have reported that an unauthorized entity was falsely registering Iran-linked vessels under the Guyana flag. Claimants lack knowledge or information sufficient to form a belief as to whether those reports apply to the PHONIX, except as stated in response to Paragraph 28, and deny the remaining allegations in Paragraph 29 on that basis.

**j. Vision Ship Management LLP**

**30.** Claimants lack knowledge or information sufficient to form a belief as to Vision Ship Management LLP's ownership, management, or operation of the PHONIX at the times alleged and therefore deny on that basis.

**31.** Claimants admit, on information and belief, that on or about December 3, 2024, OFAC designated Vision Ship Management LLP pursuant to Executive Order 13902 for

operating in the petroleum sector of the Iranian economy, and that in the same action OFAC identified the PHONIX as blocked property in which Vision had an interest. The applicable OFAC records speak for themselves, and Claimants deny any characterization inconsistent with them. Claimants further state, on information and belief, that the PHONIX remains identified on OFAC's Specially Designated Nationals and Blocked Persons List under the IRAN-EO13902 program. Claimants further admit, on information and belief, that OFAC publicly stated that Iran relies on a "shadow fleet" of tankers and ship-management firms to transport its petroleum; that the PHONIX has carried millions of barrels of Iranian crude oil to Asia since 2022; and that the vessels designated in that action, including the PHONIX, have collectively shipped tens of millions of barrels of oil for Iran. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 31.

**k. Faith Enterprise Ltd.**

**32.** Claimants admit, on information and belief, that Faith Enterprise Ltd. has been identified by publicly available databases as the registered owner of the PHONIX and lists the same business address as Vision Ship Management LLP. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 32.

**33.** Claimants admit, on information and belief, that the PHONIX has a history of engaging in business with sanctioned entities, including in Iran, and of exhibiting behaviors employed by the shadow fleet, including location spoofing and the claiming of a false flag. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 33, including those concerning Venezuela and the vessel's continuing activities.

**B. AIS Spoofing**

**34.** Claimants admit, on information and belief, that the PHONIX has spoofed its AIS position on multiple occasions. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 34, including the specific locations and the cited commercial database.

**35.** Claimants admit, on information and belief, that AIS spoofing is a deceptive shipping practice involving tampering with a vessel's AIS, and that the PHONIX has spoofed its AIS position as stated in response to Paragraph 34. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 35.

**36.** Admit that manipulating AIS data can obscure a vessel's location or identity. Claimants lack information sufficient to admit the alleged use or purpose of such practices by the PHONIX and otherwise deny on that basis.

**37.** Claimants admit, on information and belief, that vessels may disable their AIS transmissions during certain shipping activities, including ship-to-ship transfers. Claimants lack knowledge or information sufficient to admit its application to the PHONIX, except as stated in response to Paragraph 34, and deny the remaining allegations in Paragraph 37 on that basis.

**C. Historical Iran-Related Voyages by the PHONIX**

**38.** Claimants admit, on information and belief, that since in or around May 2023 the PHONIX has loaded Iran-origin crude oil at Kharg Island, Iran, and has received Iran-origin crude oil and condensate by ship-to-ship transfer, and that this oil was delivered to Asia. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 38 and Footnotes 2 and 3, including the quantities, valuations, and the confidential human source's information.

**a. The PHONIX's Late 2025 Shipment of Iran-Origin Oil**

**39.** Claimants lack knowledge or information sufficient to form a belief as to the confidential source's information concerning the vessel's July 2025 movements and therefore deny on that basis.

**40.** Claimants lack knowledge or information sufficient to form a belief concerning the vessel's alleged AIS activity, sightings, and movements between July and October 2025 and therefore deny on that basis.

**41.** Claimants admit, on information and belief, that in October 2025 the PHONIX loaded Iran-origin crude oil at Kharg Island, Iran, and departed fully laden. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 41, including the specific dates and the cited imagery.

**42.** Claimants lack knowledge or information sufficient to form a belief concerning alleged October–December 2025 cargo quantities, draft data, routing, and ship-to-ship transfer to the M/T LUNA LUSTER and therefore deny on that basis.

**b. The PHONIX's Early 2026 Shipment of Iran-Origin Oil**

**43.** Claimants admit, on information and belief, that in early January 2026 the PHONIX was at Kharg Island, Iran, and loaded Iran-origin crude oil at the T-Jetty. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 43, including the specific dates and the cited imagery.

**44.** Claimants admit, on information and belief, that on or about January 7, 2026, the PHONIX departed Kharg Island, Iran while spoofing its AIS position. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 44, including the draft measurements, cargo volume, and the date AIS transmissions resumed.

**c. The PHONIX's Current Voyage**

**45.** Claimants admit, on information and belief, that the cargo aboard the PHONIX when it was seized was Iran-origin crude oil loaded at the Jask Oil Terminal in Iran. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 45, including the contents of the cited commercial database.

**46.** Claimants admit, on information and belief, that in April 2026 the PHONIX called at the Jask Oil Terminal in Iran and loaded approximately 1.9 million barrels of Iran-origin oil. Footnote 4 refers to OFAC General License U, which speaks for itself, and Claimants deny any characterization inconsistent with its terms. Claimants admit, on information and belief, that the cargo on board the PHONIX was loaded after March 20, 2026. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 46 and Footnote 4, including the precise dates of the port call.

**47.** Claimants admit, on information and belief, that on or about April 20, 2026, the PHONIX was broadcasting as the MAJESTIC X on publicly available ship-tracking websites, reported a draft of 20 meters, and was fully laden with approximately 1.9 million barrels of crude oil lifted from the Jask Oil Terminal. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 47.

**48.** Claimants admit, on information and belief, that on or about April 22, 2026, the United States, having confirmed with Guyanese officials that the PHONIX's claimed Guyanese flag was false, treated the PHONIX as stateless and interdicted it. Claimants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 48, including the alleged communications with the vessel's captain.

**49.** Paragraph 49 incorporates Paragraphs 1 through 44 of the Complaint. Claimants repeat and incorporate their respective responses to Paragraphs 1 through 44 as though fully set

forth here. Paragraph 49 does not incorporate Paragraphs 45 through 48, which concern the Defendant Property's final voyage, its loading at the Jask Oil Terminal, and its interdiction; Claimants respond to those paragraphs above and reserve all arguments concerning the sufficiency of Count One.

**50.** Claimants admit that the IRGC, including the IRGC-QF, is a designated foreign terrorist organization. The remaining allegations of Paragraph 50 state legal conclusions to which no response is required; to the extent a response is required, Claimants deny that the Government has established that the Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(G)(i). Paragraph 50 lists "Windward" among the persons allegedly afforded influence over the IRGC but nowhere defines or describes it; Claimants lack knowledge or information sufficient to form a belief as to the allegations concerning Windward and deny them on that basis. Claimants lack knowledge or information sufficient to form a belief concerning each remaining alleged benefit conferred by the Defendant Property and deny those allegations on that basis. Claimants do not concede that any forfeiture decree may extinguish their asserted TRIA rights without adjudication.

Claimants deny that the Government is entitled to the relief requested in the unnumbered paragraph beginning "WHEREFORE" at the end of the Complaint, except to the extent that any forfeiture order is consistent with, and preserves, the interests Claimants establish under TRIA § 201(a) and applicable law.

## DEFENSES AND MATTERS PRESERVED

### First — Asserted TRIA Interest

Claimants assert the interests described in ECF No. 26, principally, in the Defendant Cargo and further in theDefendant Vessel (subject to the Court's ruling on the pending Motion,

ECF No. 34, and to the qualifications stated in Section IV of the Verified Claim), and in any traceable proceeds or substitute res, to the extent permitted by TRIA § 201(a), 28 U.S.C. § 1610 note, and other applicable law. ECF No. 26 ¶4. Claimants' asserted interest arises under TRIA § 201(a) and does not depend on a lien or writ. TRIA § 201(a) gives holders of qualifying terrorism judgments a statutory right to execute against a defined category of property, the blocked assets of the terrorist party and its agencies and instrumentalities, and that right is not a generalized claim against a debtor's assets at large. ECF No. 26 ¶35. Claimants therefore do not concede that they are unsecured creditors with only a general interest in Iran's property. The Claimants' final default judgment against Iran, the IRGC, and MOIS remains substantially unsatisfied. *Swinney v. Islamic Republic of Iran*, No. 1:20-cv-2316 (ACR), ECF No. 59, at 2–3 (D.D.C. May 30, 2025); *id.*, ECF No. 63, at 1–2 & n.1.Claimants allege that the Defendant Cargo is property of Iran or of an agency or instrumentality of Iran and is a blocked asset within the meaning of TRIA § 201(d)(2), ECF No. 26 ¶¶ 11–28, and the Government has represented in this action that ownership of the cargo remains with the Iranian government, ECF No. 15 at 1 n.1. Claimants further allege that the IRGC acts as an agent and instrumentality of Iran, as they asserted in *Swinney*. ECF No. 40, at 8, 33. The pendency of this forfeiture action, and a license authorizing the Government to pursue it, do not by themselves make TRIA inapplicable to otherwise blocked property. *See Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 638–41 (D.C. Cir. 2025). Claimants' eligibility for payments from the U.S. Victims of State Sponsored Terrorism Fund does not displace their rights under TRIA. *See* 34 U.S.C. § 20144(d)(5)(B); *Estate of Levin*, 156 F.4th at 644. Claimants have not obtained a writ of attachment or execution against the Defendant Property and, in this Answer, do not rely on the judgment or the March 17, 2026, order under 28 U.S.C. § 1610(c), standing alone, as a lien;

Claimants reserve the right to pursue attachment and execution under TRIA. Claimants assert all rights and priorities available under TRIA § 201(a), subject to the requirements of applicable law, and reserve all rights concerning priority relative to competing claimants and interests in the Defendant Property.

**Second — Statutory Forfeiture Requirements**

Claimants contest forfeiture to the extent the Government cannot prove the elements of 18 U.S.C. § 981(a)(1)(G)(i) and other applicable statutory requirements. The Government bears the burden of proving by a preponderance of the evidence that the Defendant Property, and each component of it, is subject to forfeiture. 18 U.S.C. § 983(c)(1). The Complaint also fails to state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet that burden at trial as to each component of the Defendant Property, including the alleged nexus between the Defendant Vessel and any source of influence over the IRGC. *See* Supp. R. G(2)(f). Claimants reserve the right to move to dismiss under Supplemental Rule G(8)(b). To the extent the Government invokes 18 U.S.C. § 981(f) or any other provision of the civil-forfeiture statute to defeat Claimants' interest, TRIA § 201(a) applies "notwithstanding any other provision of law" and prevails over any conflicting provision, *see Estate of Levin*, 156 F.4th at 643 n.1, and the effect of any relation-back theory on Claimants' TRIA rights is reserved for determination on a developed record.

**Third — Property-Specific Claim and Timeliness**

Claimants' September 29, 2026 Verified Claim was timely as to the Defendant Cargo, for which the Government's separate notice reflects a first publication date of August 25, 2026, ECF No. 21-2 at 2, and a claim period running through October 26, 2026. The Government's notice for the Defendant Vessel, which describes the Vessel alone and does not mention the cargo,

reflects a first publication date of July 20, 2026. ECF No. 21-1 at 2. By their Opposed Motion (ECF No. 34), Claimants have asked the Court (1) to confirm that timeliness; (2) for good cause under Supplemental Rule G(5)(a)(ii), or alternatively upon a finding of excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B), to set September 29, 2026 as the filing time for the Verified Claim insofar as it concerns the Defendant Vessel; and (3) only if the Court concludes that the Vessel's September 18, 2026 deadline also governed the Cargo, to set September 29, 2026 as the filing time for the Verified Claim in its entirety. Claimants file this Answer to comply with Supplemental Rule G(5)(b), and it is without prejudice to the pending Motion. No response herein concedes that both properties were subject to the same publication-based deadline. Claimants also reserve all rights concerning the Government's compliance with Supplemental Rule G(4), including the content and timing of its notice, and the absence of direct notice to Claimants. See ECF No. 13 at 1; ECF No. 15 at 1.

**Fourth — Protection of Res and Proceeds**

Claimants preserve their asserted interests in proceeds, interest, traceable proceeds, and substitute res from any authorized disposition of the Vessel or Cargo, and their right to seek appropriate procedures to protect or execute on those interests. Claimants request notice and an opportunity to be heard before any interlocutory sale or other disposition of the Defendant Property, *see* Supplemental Rule G(7)(b), and that any sale proceeds be held as a substitute res under Supplemental Rule G(7)(b)(iv), subject to Claimants' asserted interests. This paragraph is not a request for an attachment writ, an assertion of priority as among holders of TRIA judgments, or an independent claim to funds beyond the amount legally recoverable.

**Fifth — TRIA § 201(a) Notwithstanding Statutory-Standing Requirements**

To the extent the Government contends that 18 U.S.C. § 983(a)(2)(C), (a)(4)(A), or (d), or Supplemental Rule G(5), requires a claimant to hold an interest in the specific Defendant

Property beyond that conferred by TRIA, Claimants assert that any such requirement is an execution-related barrier that TRIA § 201(a), which applies "notwithstanding any other provision of law," displaces. *See United States v. All Petroleum-Product Cargo Aboard the Achilleas*, No. 21-0305 (PLF), 2026 WL 2618380, at *7–9 (D.D.C. Sept. 4, 2026). Claimants also have Article III standing because their colorable claim under TRIA § 201(a) would be extinguished by a final forfeiture order. *See id.* at *4–6. This defense concerns the specific-interest requirement only; Claimants do not contend that TRIA displaces Rule G(5)'s claim deadline, which is addressed in ECF No. 34.

**Sixth — No Waiver**

The defenses and positions above are asserted only to the extent supported by the record and applicable law, are not intended to shift the burden of proof, and do not waive the right to seek leave to amend under Rule 15 when warranted. Claimants reserve the right to contest a proposed forfeiture order or distribution that would impair an interest they establish under applicable law.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Claimants demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Claimants request that the Court: (1) adjudicate their interests in the Defendant Property consistently with Supplemental Rule G, TRIA, and applicable law; (2) deny or condition forfeiture relief to the extent necessary to protect any legally established interest of Claimants; (3) preserve the res or any substitute proceeds as legally appropriate pending

adjudication of competing interests; and (4) try before a jury all issues so triable; and (5) grant such further relief as is just and proper.

.

Dated: October 20, 2026

Respectfully submitted,

/s/ J. Christopher Klotz
J. Christopher Klotz, Esq.
D.D.C. Bar No. 439409
Douglass A. Kreis, Esq.
D.D.C. Bar No. FL00173
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Tel: (850) 202-1010
Fax: (850) 916-7449
Email: cklotz@awkolaw.com
Email: dkreis@awkolaw.com

*Counsel for the Swinney Claimants*

**CERTIFICATE OF SERVICE**

I certify that on October 20, 2026, I filed the foregoing document through the Court's CM/ECF system, which will send notice of electronic filing to registered counsel of record.

/s/ J. Christopher Klotz
J. Christopher Klotz