**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IN THE MATTER OF THE SEIZURE OF THE M/T PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD,<br><br>Defendants *In Rem*. | ) | Civil Action No. 1:26-cv-01405-SLS<br><br>Judge Sparkle L. Sooknanan |

**AMBUSH CLAIMANTS' VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM**

Pursuant to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G"), the judgment creditors of the Islamic Republic of Iran identified in Exhibit A (collectively, the "Ambush Claimants"), by their undersigned counsel, submit this Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem*.

## PRELIMINARY STATEMENT

The Ambush Claimants are 428 individuals and estates who hold final judgments entered by this Court against the Islamic Republic of Iran ("Iran") under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, in five actions: *Flanagan v. Islamic Republic of Iran*, No. 1:10-cv-01643 (D.D.C.); *Parhamovich v. Islamic Republic of Iran*, No. 1:17-cv-00061 (D.D.C.); *Schooley v. Islamic Republic of Iran*, No. 1:17-cv-01376 (D.D.C.); *Ackley v. Islamic Republic of Iran*, No. 1:20-cv-00621 (D.D.C.); and *Breezee v. Islamic Republic of Iran*, No. 1:23-cv-03392 (D.D.C.). The judgments arise from the June 25, 1996 bombing of

the Khobar Towers in Dhahran, Saudi Arabia; the October 12, 2000 attack on the USS Cole in Aden, Yemen; and the January 17, 2007 ambush in Baghdad, Iraq that killed Andrea Parhamovich. Together the judgments award the Ambush Claimants $1,574,238,000.00 in compensatory damages. Iran has never paid any part of them.

The Ambush Claimants assert an interest in the Defendant Cargo (defined below) and its proceeds under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note), limited to the amount necessary to satisfy the compensatory portion of their judgments, plus post-judgment interest. The United States' own filings supply the predicate for that interest. The United States has told this Court that the cargo "was supplied by the National Iranian Oil Company (commonly referred to as 'NIOC') and loaded at the Jask Oil Terminal in Iran," ECF No. 7 at 2; that "[t]he only bills of lading identified in the document review indicate that ownership remains with NIOC," *id.* at 22; that "the oil cargo currently aboard the PHONIX belongs to NIOC," *id.* at 23; and that NIOC is the "purported owner of the Defendant Cargo," whose "ownership interest . . . remains with the Iranian government," ECF No. 15 at 1 & n.1.

This Claim asserts an interest in the *res* under Supplemental Rule G. It does not itself seek the issuance of a writ of attachment, writ of garnishment, or other affirmative process. The Ambush Claimants reserve all rights to pursue separate attachment or execution process under TRIA and 28 U.S.C. § 1610.

## I. THE PROPERTY CLAIMED

1. The Ambush Claimants claim an interest in: (a) all petroleum product cargo laden aboard the Motor Tanker PHONIX, International Maritime Organization Number 9198317, at the time of its seizure by the United States in April 2026, described in the Verified Complaint as

approximately 1.9 million barrels of Iran-origin crude oil loaded at the Jask Oil Terminal in Iran, Verified Compl. ¶¶ 2, 46-47 (ECF No. 1) ("Compl."); and (b) all proceeds, traceable proceeds, accrued interest, and any substitute *res* resulting from any interlocutory or final sale or other disposition of that cargo, *see* Supplemental Rule G(7)(b)(iv) (together, the "Defendant Cargo").

2. The Ambush Claimants claim such portion of the Defendant Cargo as is necessary to satisfy the compensatory awards set out in Exhibit A, plus post-judgment interest under 28 U.S.C. § 1961.

3. The Ambush Claimants assert no claim to the Motor Tanker PHONIX itself (the "Defendant Vessel") at this time, and reserve the right to seek leave to file a claim to the Defendant Vessel, and to any proceeds or substitute *res* derived from it, under Supplemental Rule G(5)(a)(ii) should the Court extend the time to file claims to the Defendant Vessel.

4. The amounts stated in this Claim and in Exhibit A are the compensatory damages awarded in the judgments, as entered. The Ambush Claimants have received partial distributions through the United States Victims of State Sponsored Terrorism Fund, 34 U.S.C. § 20144 (the "USVSST Fund"), which will be credited before any execution or distribution.

## II. THE AMBUSH CLAIMANTS AND THEIR JUDGMENTS

5. *Flanagan.* In *Flanagan v. Islamic Republic of Iran*, No. 1:10-cv-01643 (D.D.C.), this Court entered an amended judgment on April 2, 2015 under 28 U.S.C. § 1605A against Iran in favor of the family of a sailor killed in the October 12, 2000 attack on the USS Cole. 5 Ambush Claimants hold compensatory awards under that judgment totaling $18,750,000.00.

6. *Parhamovich.* In *Parhamovich v. Islamic Republic of Iran*, No. 1:17-cv-00061 (D.D.C.), this Court entered judgment on November 27, 2023 under 28 U.S.C. § 1605A against Iran arising from the January 17, 2007 ambush in Baghdad, Iraq that killed Andrea Parhamovich.

6 Ambush Claimants, the Estate of Andrea S. Parhamovich and five family members, hold compensatory awards under that judgment totaling $23,738,000.00.

7. *Schooley.* In *Schooley v. Islamic Republic of Iran*, No. 1:17-cv-01376 (D.D.C.), this Court entered judgment on June 27, 2019 under 28 U.S.C. § 1605A against Iran in favor of servicemembers injured in the June 25, 1996 bombing of the Khobar Towers and their family members. 213 Ambush Claimants hold compensatory awards under that judgment totaling $866,000,000.00.

8. *Ackley.* In *Ackley v. Islamic Republic of Iran*, No. 1:20-cv-00621 (D.D.C.), this Court entered judgment on August 12, 2022 under 28 U.S.C. § 1605A against Iran in favor of servicemembers injured in the Khobar Towers bombing and their family members. 157 Ambush Claimants hold 159 compensatory awards under that judgment totaling $533,750,000.00; two of those claimants recovered both as servicemembers and as spouses.

9. *Breezee.* In *Breezee v. Islamic Republic of Iran*, No. 1:23-cv-03392 (D.D.C.), this Court entered judgment on September 24, 2025 under 28 U.S.C. § 1605A against Iran in favor of servicemembers injured in the Khobar Towers bombing and their family members. 47 Ambush Claimants hold compensatory awards under that judgment totaling $132,000,000.00.

10. In all, the Ambush Claimants hold 430 compensatory awards totaling $1,574,238,000.00. Exhibit A identifies each Ambush Claimant, the action and judgment under which each recovered, the capacity in which each recovered, and the compensatory damages awarded, with subtotals for each action.

11. Each judgment was entered under 28 U.S.C. § 1605A on claims based upon acts of terrorism for which this Court found Iran liable. Each judgment is final. Each awards

compensatory damages. Iran has paid no part of any of them, voluntarily or otherwise, and each continues to accrue post-judgment interest under 28 U.S.C. § 1961.

12. The Flanagan, Parhamovich, Schooley, and Ackley judgments were served on Iran through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4) and (e). Flanagan, ECF No. 74; Parhamovich, ECF No. 84; Schooley, ECF No. 287; Ackley, ECF No. 159. Service of the Breezee judgment has been pending with the Department of State since November 26, 2025. Breezee, ECF No. 141.

13. Certain of the awards listed in Exhibit A were entered in favor of, or were held by, judgment holders who have since died. Each such award is listed in Exhibit A in the name of the estate, which succeeds to the decedent's right to enforce the judgment under the law of the decedent's domicile.

## III. THE DEFENDANT CARGO IS PROPERTY OF IRAN OR OF AN AGENCY OR INSTRUMENTALITY OF IRAN, AND IS A BLOCKED ASSET

### A. Iran and the IRGC are terrorist parties.

14. Iran has been designated a state sponsor of terrorism since January 19, 1984, and has not been delisted. Compl. ¶ 6. The Islamic Revolutionary Guard Corps ("IRGC"), including the IRGC-Qods Force ("IRGC-QF"), was designated a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act effective April 15, 2019. Compl. ¶ 17.

15. Iran and the IRGC are therefore each a "terrorist party" within the meaning of TRIA § 201(d)(4).

### B. Iran owns its petroleum, and NIOC and IOTC are its agencies or instrumentalities.

16. The Verified Complaint alleges that under Articles 44 and 45 of Iran's Constitution and Article 2 of Iran's Oil Law, Iran's oil resources are public wealth at the disposal of the Islamic government, and that all facilities, equipment, assets, and investments of the

Ministry of Oil and its subsidiaries, at home and abroad, belong to the Iranian people and the Islamic government. Compl. ¶¶ 8-9.

17. The Verified Complaint alleges that the Iranian Ministry of Petroleum is a state-run organ affiliated with the executive branch of the Iranian government, which exercises its authority over the petroleum industry through four subsidiaries, including the National Iranian Oil Company ("NIOC"). Compl. ¶ 7. The Ministry was designated under Executive Order 13224 on October 26, 2020 for providing financial support to the IRGC-QF. Compl. ¶ 10.

18. The Verified Complaint alleges that NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Oil, responsible for the exploration, production, refining, and export of oil and petroleum products in Iran; that the Department of the Treasury determined in 2012 that NIOC is an agent or affiliate of the IRGC; and that OFAC designated NIOC under Executive Order 13224 on October 26, 2020 for supporting the IRGC-QF. Compl. ¶¶ 20-21.

19. The Verified Complaint alleges that the Iranian Oil Terminals Company ("IOTC") is a subsidiary of NIOC, that the government of Iran is IOTC's "global ultimate owner," and that IOTC operates the Jask Oil Terminal. Compl. ¶¶ 22, 25.

20. The pleaded facts concerning NIOC’s governmental functions and ownership, and IOTC’s ownership and operation of the Jask Oil Terminal, establish that each is an agency or instrumentality of Iran under TRIA § 201(a). *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 135-36 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018).

**C. The Defendant Cargo is Iranian state oil.**

21. The Verified Complaint alleges that between on or about April 9, 2026 and on or about April 12, 2026, the PHONIX called at the Jask Oil Terminal in Iran and there loaded

approximately 1.9 million barrels of Iran-origin crude oil, and that the PHONIX was fully laden with that cargo when it was interdicted on or about April 22, 2026. Compl. ¶¶ 45-48.

22. The United States has represented to this Court that oil samples recovered from the PHONIX after its seizure "confirm that the oil cargo was supplied by the National Iranian Oil Company (commonly referred to as 'NIOC') and loaded at the Jask Oil Terminal in Iran," and that the samples bear a NIOC label and NIOC and IOTC sealing tags. ECF No. 7 at 2-3.

23. The United States has further represented that the investigative team "ha[s] been unable to locate bills of lading identifying any purchaser of the oil cargo onboard the PHONIX," that "[t]he only bills of lading identified in the document review indicate that ownership remains with NIOC," and that "the oil cargo currently aboard the PHONIX belongs to NIOC and the revenue generated from its sale would likely go to support Iran's armed forces, including elements of the IRGC." ECF No. 7 at 22-23.

24. On August 21, 2026, the United States gave direct notice of this action to NIOC and to Pars Oil and Gas Company as the "purported owner of the Defendant Cargo." ECF No. 15 at 1. The United States explained that ownership of the illicit cargo remains with the Iranian government while its purchase is negotiated mid-transit, and that "[n]o documents on board indicated the cargo on board was sold to a third party at the time the Defendant Property was seized." *Id.* at 1 n.1. As of September 8, 2026, neither NIOC nor any other purported owner had filed a claim. *Id.* at 1.

25. The United States has valued the Defendant Cargo at between $130,000,000 and $140,000,000, depending on quality and the spot price. ECF No. 7 at 4, 8.

26. On the basis of the foregoing, the Defendant Cargo is property of Iran and of an agency or instrumentality of Iran within the meaning of TRIA § 201(a). At the pleading stage in

a civil-forfeiture action concerning Iranian crude oil, the Court of Appeals held that documentation identifying NIOC as consignor, together with NIOC's central position in Iran's oil industry, supported a reasonable inference that the oil belonged to NIOC. *United States v. All Petroleum-Prod. Cargo Onboard M/T Arina*, 173 F.4th 342, 346 (D.C. Cir. 2026), *petition for cert. filed*, No. 26-103 (U.S. July 17, 2026). The inference is stronger here, where the United States itself alleges that the cargo was loaded at a terminal operated by a NIOC subsidiary, that recovered samples bear NIOC and IOTC labeling and seals, that the only bills of lading show NIOC ownership, and that the cargo "belongs to NIOC."

**D. The Defendant Cargo is a blocked asset.**

27. Executive Order 13599, 77 Fed. Reg. 6659 (Feb. 8, 2012), blocks all property and interests in property of the Government of Iran, including any person owned or controlled by the Government of Iran, that are in the United States, that come within the United States, or that come within the possession or control of any United States person. NIOC is, in addition, a designated person under Executive Order 13224. Compl. ¶ 21.

28. The Defendant Cargo, as property of Iran and of Iranian state instrumentalities now in the possession and control of the United States, is blocked under Executive Order 13599 and the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1702, independent of and without regard to the seizure of the PHONIX or the commencement of this action. It is therefore a "blocked asset" within the meaning of TRIA § 201(d)(2)(A), and no exclusion in TRIA § 201(d)(2)(B) applies.

29. The Verified Complaint acknowledges that OFAC General License U temporarily authorized certain dealings in Iranian-origin crude oil loaded on or before 12:01 a.m. on March 20, 2026, and alleges that the Defendant Cargo was loaded after that date. Compl. ¶ 46 n.4.

## IV. THE AMBUSH CLAIMANTS HOLD A COGNIZABLE INTEREST IN THE DEFENDANT CARGO

30. TRIA § 201(a) provides that, "[n]otwithstanding any other provision of law," in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, the blocked assets of that terrorist party, including the blocked assets of any agency or instrumentality of that terrorist party, "shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable."

31. TRIA § 201(a) applies "[n]otwithstanding any other provision of law" and removes foreign sovereign immunity from attachment and execution for qualifying blocked assets. *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 642-43 (D.C. Cir. 2025). It permits execution against the blocked assets of an agency or instrumentality of a terrorist party even when that entity is not named in the judgment. *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49-50 (2d Cir. 2010). Where TRIA specifically authorizes an attachment that the civil-forfeiture statute would otherwise prohibit, TRIA controls. *Est. of Levin*, 156 F.4th at 643 n.1. Applying that principle, this Court has held that the civil-forfeiture statute's specific-interest requirement "must give way to the TRIA." *United States v. All Petroleum-Prod. Cargo Aboard Achilleas*, No. 21-cv-305 (PLF), 2026 WL 2618380, at *8-9 (D.D.C. Sept. 4, 2026).

32. At the claim stage, a claimant need only assert a facially colorable interest in the defendant property to establish Article III standing; whether that interest is ultimately established is a question for a later stage, and statutory standing is a separate inquiry. *See United States v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1089-91 (D.C. Cir. 2017); *United States v. Ross*, 161 F.4th 100, 110 (2d Cir. 2025), petition for cert. filed, No. 26-91 (U.S. July 17, 2026); Supplemental Rule G(5)(a)(i), G(8)(c).

33. The Ambush Claimants satisfy each element of TRIA § 201(a). They hold judgments against Iran under 28 U.S.C. § 1605A on claims based upon acts of terrorism. Iran, a designated state sponsor of terrorism, is a "terrorist party." TRIA § 201(d)(4). NIOC and IOTC are agencies or instrumentalities of Iran. And the Defendant Cargo, as alleged above, is a blocked asset of Iran and of NIOC. The Ambush Claimants therefore assert a colorable ability to obtain execution against the Defendant Cargo under TRIA § 201(a), to the extent of the compensatory damages awarded to them, which a final forfeiture would extinguish. That threatened loss supports Article III standing, and TRIA displaces the specific-interest requirement that would otherwise bar their participation under 18 U.S.C. § 983 and Supplemental Rule G(5). *See Achilleas*, 2026 WL 2618380, at *3-9.

34. The United States seeks forfeiture of the Defendant Cargo under 18 U.S.C. § 981(a)(1)(G)(i) on the ground that it affords NIOC, IOTC, and others a source of influence over the IRGC, a designated foreign terrorist organization, by generating revenue for the IRGC. Compl. ¶¶ 1, 49-50. The United States' own allegations identify the Defendant Cargo as property of Iran, the Ambush Claimants' judgment debtor, and of NIOC, an agency or instrumentality of Iran. The interest asserted here arises from the same character of the property that the United States alleges makes it forfeitable.

35. The pendency of this forfeiture action does not extinguish that interest. In *Estate of Levin*, the Court of Appeals held that blocked funds remained blocked assets available under TRIA even though OFAC had licensed the United States to pursue their forfeiture, because no forfeiture order had been entered, and that the prior-exclusive-jurisdiction doctrine does not bar a civil-forfeiture action and TRIA attachment proceedings against the same property in the same federal court. 156 F.4th at 637-43 & n.1. The Ambush Claimants' TRIA rights may therefore be

adjudicated consistently with this Court's jurisdiction over the Defendant Cargo and any substitute *res*.

## V. NO WRIT SOUGHT; SUBSTITUTE RES, PRIORITY, AND RESERVATION OF RIGHTS

36. This Claim does not seek the issuance of a writ of attachment, writ of garnishment, writ of execution, or other affirmative process. The Ambush Claimants reserve all rights to pursue attachment and execution under TRIA and 28 U.S.C. § 1610 in this Court or in any other court of competent jurisdiction.

37. Supplemental Rule G(7)(b)(iv) provides that the proceeds of an interlocutory sale are a substitute *res* subject to forfeiture in place of the property sold. The United States withdrew its request for an interlocutory sale in its September 8, 2026 status report. ECF No. 15 at 2. If the Defendant Cargo is sold in an interlocutory sale, the claim asserted here continues against the proceeds as a substitute *res* to the same extent as against the Defendant Cargo, and those proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of this action. Supplemental Rule G(7)(b)(iv).

38. As among holders of qualifying terrorism judgments, the Ambush Claimants seek equitable, pro rata distribution of any recovery from the Defendant Cargo or its proceeds based on unpaid compensatory damages. They object to any claim of priority by another judgment holder, including the cross-claim for priority asserted in ECF No. 32, and reserve all rights with respect to it.

39. The Ambush Claimants reserve the right to amend or supplement this Claim and Exhibit A and to seek discovery concerning the ownership, traceability, blocking status, seizure, custody, valuation, sale, and disposition of the Defendant Cargo.

## VI. TIMELINESS

40. The United States sent direct notice of this action under Supplemental Rule G(4)(b) to NIOC, Pars Oil and Gas Company, Faith Enterprises Ltd, Seaway Ship Management LLC, and Vision Ship Management. ECF No. 15 at 1. No direct notice was sent to the Ambush Claimants or to their counsel. The September 28, 2026 date stated in the United States' status report, *id.* at 2, was computed from those direct notices under Supplemental Rule G(5)(a)(ii)(A), and does not govern claimants who received no direct notice.

41. Where notice was published but direct notice was not sent to the claimant, a claim must be filed "no later than 60 days after the first day of publication on an official internet government forfeiture site." Supplemental Rule G(5)(a)(ii)(B). Notice of the forfeiture of the Defendant Cargo was first published on www.forfeiture.gov on August 25, 2026, ECF No. 21-2 at 1, 3, and the published notice itself directed that any claim be filed "within 60 days from the first day of publication (August 25, 2026)." *Id.* at 2. The sixtieth day after August 25, 2026 is Saturday, October 24, 2026; under Fed. R. Civ. P. 6(a)(1)(C), the period runs to Monday, October 26, 2026. This Claim is filed within that period.

42. In the alternative, the Ambush Claimants request that the Court for good cause set a different time and accept this Claim as timely. Supplemental Rule G(5)(a)(ii). The Ambush Claimants received no direct notice and filed promptly within the cargo notice’s published 60-day period. ECF No. 21-2 at 2; Verification ¶ 7. The United States withdrew its request for an interlocutory sale on September 8, 2026, and other terrorism judgment creditors are actively litigating their claims. ECF No. 15 at 2; ECF Nos. 32, 35. Accepting this Claim allows the Ambush Claimants to participate in that ongoing adjudication without prejudice to any party.

## VII. THE USVSST FUND ALTERNATIVE

43. The Ambush Claimants seek to apply the Defendant Cargo, or its proceeds, directly to the compensatory portion of their judgments. In the alternative, if the Defendant Cargo or its proceeds are forfeited to the United States, the Ambush Claimants request that seventy-five percent of the net proceeds be transferred to the United States Victims of State Sponsored Terrorism Fund as required by 34 U.S.C. § 20144(e)(2)(A)(ii). The Ambush Claimants reserve all rights with respect to that disposition.

## VIII. ANSWER TO FOLLOW; SERVICE; VERIFICATION

44. The Ambush Claimants will serve and file an answer or a motion under Rule 12 within 21 days after the filing of this Claim, as required by Supplemental Rule G(5)(b), and preserve all defenses and objections available to them.

45. In accordance with Supplemental Rule G(5)(a)(i)(D) and the published notice, this Claim is being served on the attorney for the United States, Assistant United States Attorney Rajbir Datta, 601 D Street, N.W., Washington, DC 20530, by certified mail, and on all counsel of record through the Court's CM/ECF system.

46. This Claim is verified under penalty of perjury pursuant to 28 U.S.C. § 1746 by the verification of the Ambush Claimants' counsel that follows, made on their behalf on counsel's personal knowledge and review of the judgments and dockets.

## PRAYER FOR RELIEF

WHEREFORE, the Ambush Claimants respectfully request that the Court:

(a) recognize this Claim and the Ambush Claimants' interest in the Defendant Cargo under TRIA § 201(a), to the extent of the unsatisfied compensatory portion of their judgments against the Islamic Republic of Iran, plus post-judgment interest;

(b) recognize that the Ambush Claimants' interest attaches to and continues against the corresponding proceeds or substitute *res* upon any interlocutory sale of the Defendant Cargo;

(c) as among holders of qualifying terrorism judgments, provide for the equitable, pro rata distribution of any recovery from the Defendant Cargo or its proceeds, and deny any competing claim of priority not established under applicable law;

(d) in the alternative, to the extent any part of the Defendant Cargo or its proceeds is forfeited to the United States, direct an accounting and the transfer of the net proceeds to the United States Victims of State Sponsored Terrorism Fund to the extent required by 34 U.S.C. § 20144(e)(2)(A)(ii);

(e) deny forfeiture to the United States to the extent inconsistent with the foregoing; and

(f) grant such other and further relief as the Court deems just and proper.

Dated: October 23, 2026

Respectfully submitted,

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.
Bar No. MD27025
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road, Suite 303
Baltimore, Maryland 21208
Phone: (410) 484-2070
Email: joshua@ambushlaw.com

Counsel for the Ambush Claimants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IN THE MATTER OF THE SEIZURE OF THE M/T PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD,<br><br>Defendants *In Rem*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:26-cv-01405-SLS<br><br>Judge Sparkle L. Sooknanan |

**VERIFICATION OF AMBUSH CLAIMANTS' CLAIM**

I, Joshua M. Ambush, Esq., an attorney admitted to practice before this Court, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the principal of the Law Offices of Joshua M. Ambush, LLC, counsel of record for the Ambush Claimants. I make this verification on behalf of the Ambush Claimants based on my personal knowledge, my review of the firm's case files, and my review of the official dockets of this Court.

2. I represent the 428 individuals and estates identified in Exhibit A (the "Ambush Claimants"), who hold 430 unsatisfied compensatory damages awards against the Islamic Republic of Iran totaling $1,574,238,000.00, plus post-judgment interest.

3. Those awards were entered by this Court under 28 U.S.C. § 1605A in *Flanagan v. Islamic Republic of Iran*, No. 1:10-cv-01643 (D.D.C.); *Parhamovich v. Islamic Republic of Iran*, No. 1:17-cv-00061 (D.D.C.); *Schooley v. Islamic Republic of Iran*, No. 1:17-cv-01376 (D.D.C.); *Ackley v. Islamic Republic of Iran*, No. 1:20-cv-00621 (D.D.C.); and *Breezee v. Islamic Republic of Iran*, No. 1:23-cv-03392 (D.D.C.), on claims arising from acts of state-sponsored terrorism,

including the June 25, 1996 Khobar Towers bombing, the October 12, 2000 attack on the USS Cole, and the January 17, 2007 ambush in Baghdad, Iraq that killed Andrea Parhamovich. Each judgment qualifies under Section 201 of the Terrorism Risk Insurance Act of 2002.

4. The Flanagan, Parhamovich, Schooley, and Ackley judgments were served on Iran through diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4) and (e) (Flanagan, ECF No. 74; Parhamovich, ECF No. 84; Schooley, ECF No. 287; Ackley, ECF No. 159). Service of the Breezee judgment has been pending with the Department of State since November 26, 2025 (Breezee, ECF No. 141).

5. To date, Iran has not paid any portion of any of the Ambush Claimants' judgments. The Ambush Claimants have received partial distributions through the United States Victims of State Sponsored Terrorism Fund, but their judgments remain substantially unsatisfied.

6. The statements in this verification concerning the ownership of the Defendant Cargo and the status of NIOC and IOTC are based on the allegations and representations of the United States in this action, including ECF Nos. 1, 7, and 15, which state that the cargo was supplied by NIOC, loaded at an Iranian state terminal, and remains the property of NIOC and the Iranian government. NIOC and IOTC are agencies or instrumentalities of Iran, and their assets are blocked by operation of United States law. *See* Exec. Order No. 13599, 77 Fed. Reg. 6659 (Feb. 8, 2012).

7. Neither the Ambush Claimants nor my office received direct notice of this action from the United States. I learned of this action and of the United States' representations concerning NIOC's ownership of the Defendant Cargo through review of the public docket, and promptly prepared this Claim.

8. To preserve the Ambush Claimants' ability to pursue execution against the Defendant Cargo, and on their behalf, I hereby give notice of and verify the Ambush Claimants' claim to so much of the Defendant Cargo and its proceeds as may be necessary to satisfy the outstanding compensatory damages owed to them under their judgments against Iran, plus post-judgment interest. The statements in the foregoing Verified Claim and Statement of Interest are true and correct to the best of my knowledge, information, and belief. A list of the Ambush Claimants, with the underlying action, capacity, and compensatory award of each, is set forth in Exhibit A.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on October 23, 2026, at Baltimore, Maryland.

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, I electronically filed the foregoing Ambush Claimants' Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem*, together with the Verification of Ambush Claimants' Claim and Exhibit A, via CM/ECF for the United States District Court for the District of Columbia, which will serve notice on all counsel of record, including counsel for the United States.

I further certify that, in accordance with Supplemental Rule G(5)(a)(i)(D) and the published notice of forfeiture, a true and correct copy of the foregoing was served by certified mail, return receipt requested, upon Assistant United States Attorney Rajbir Datta, U.S. Attorney's Office for the District of Columbia, 601 D Street, N.W., Washington, DC 20530.

Dated: October 23, 2026

/s/ Joshua M. Ambush
Joshua M. Ambush, Esq.
Counsel for the Ambush Claimants