**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOTOR TANKER PHONIX WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9198317, AND ALL PETROLEUM PRODUCT ONBOARD,

Defendants In Rem.

Civil Action No. 1:26-cv-01405-SLS

## NOTICE OF VERIFIED CLAIM AND STATEMENT OF INTEREST OR RIGHT IN PROPERTY SUBJECT TO FORFEITURE IN REM (DEFENDANT PETROLEUM CARGO)

Claimant Angela Mistrulli Cantone ("Claimant"), appearing *pro se*, is a victim of state-sponsored terrorism who holds a final judgment against the Islamic Republic of Iran ("Iran") and certain of its agencies and instrumentalities, awarding her $8,500,000.00 in compensatory (solatium) damages under 28 U.S.C. § 1605A for the death of her father in the terrorist attacks of September 11, 2001, together with prejudgment interest, in *Hoglan, et al. v. Islamic Republic of Iran, et al.*, Case No. 1:11-cv-07550 (GBD)(SN) (S.D.N.Y.) (the "Hoglan Action"), related to *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD)(SN) (S.D.N.Y.). Claimant files this Notice individually, on her own behalf, and not as a member of any group of judgment creditors.

Claimant learned of this forfeiture action and the evidence set forth in the Government's Verified Complaint for Forfeiture *In Rem* at ECF No. 1 in *United States of America v. Motor Tanker Phonix with International Maritime Organization Number 9198317, and All Petroleum Product Onboard*, No. 1:26-cv-01405-SLS, pending in this District (the "Phonix Action"), through the Government's notice of civil forfeiture of the cargo, which was published on www.forfeiture.gov beginning August 25, 2026. *See* Phonix Action, ECF No. 21-2 (Declaration of Publication and Attachment 1). The Government's complaint states that the Defendant Motor Tanker (the "Phonix"), previously named the LUNA LAKE, the PACIFIC CHALLENGER, and the FORMOSAPETRO CHALLENGER, is managed, operated, and owned by India-based Vision Ship Management LLP ("Vision"), is registered to Faith Enterprise Ltd. ("Faith Enterprise"), and was seized in April 2026 while laden with approximately 1.9 million barrels of Iran-origin crude oil. Phonix Action, ECF No. 1 ¶¶ 2, 27, 30–32, 45–48. This Notice is directed to that cargo, identified in the Government's notice as "All Petroleum Product Cargo aboard the M/T PHONIX with IMO number 9198317 (26-FBI-003173)" (the "Petroleum Assets" or the "Defendant



RECEIVED
OCT 26 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Property"). Claimant asserts this claim as to the Petroleum Assets only and reserves all rights as to the Phonix itself. The Government further alleges that on or about December 3, 2024, the Office of Foreign Assets Control ("OFAC") designated Vision under Executive Order 13902 for operating in the petroleum sector of the Iranian economy, and identified the Phonix as blocked property in which Vision has an interest. Phonix Action, ECF No. 1 ¶ 31.

The Government seeks forfeiture of the Phonix and the Petroleum Assets under 18 U.S.C. § 981(a)(1)(G)(i) on the theory that they afford persons, including the National Iranian Oil Company ("NIOC"), the Iranian Oil Terminals Company ("IOTC"), and the National Iranian South Oil Company ("NISOC"), sources of influence over the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF"). Phonix Action, ECF No. 1 ¶¶ 1, 50 & at 18–19 (Count One). The IRGC, the Iranian Ministry of Petroleum, and NIOC are each judgment debtors in Claimant's judgment.

Based on the information established by the Government in the Phonix Action, Claimant is entitled to attach and execute on the property of Iran and its agencies and instrumentalities "[n]otwithstanding any other provision of law" under the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002), codified at 28 U.S.C. § 1610 note. Claimant therefore files this Notice pursuant to 18 U.S.C. § 983(a) and Supplemental Rule G(5)(a) to assert her superior interest in the Defendant Property, and all proceeds traceable thereto, as may ultimately be necessary to satisfy her outstanding compensatory damages judgment against Iran, plus post-judgment interest. Under TRIA, Claimant's interest in the Petroleum Assets is senior to any interest of the United States or any other non-TRIA claimant.

In support of this Notice, Claimant states as follows:

## I. Claimant's Judgment Against Iran

1. Claimant is a plaintiff in the Hoglan Action and the child of Joseph D. Mistrulli, who was killed in the terrorist attacks of September 11, 2001, which Iran sponsored and materially supported. The plaintiffs in the Hoglan Action are the estates of, and the family members of, individuals killed in those attacks.

2. Following an evidentiary hearing on liability held on August 17, 2015, the United States District Court for the Southern District of New York ("SDNY") entered Findings of Fact and Conclusions of Law and an Order of Judgment on August 31, 2015, holding the following sixteen defendants liable to the Hoglan plaintiffs: (1) Islamic Republic of Iran; (2) Ayatollah Ali Hoseini-Khamenei; (3) Ali Akbar Hashemi Rafsanjani; (4) Iran's Ministry of Information and Security; (5) Islamic Revolutionary Guard Corps; (6) Iran's Ministry of Petroleum; (7) National Iranian Oil Corporation; (8) National Iranian Tanker Corporation; (9) National Iranian Gas Company; (10) National Iranian Petrochemical Company; (11) Iran's Ministry of Commerce; (12) Iran's Ministry of Economic Affairs and Finance; (13) Iran's Ministry of Defense and Armed Forces Logistics; (14) Iran Airlines; (15) Central Bank of Iran; and (16) Hezbollah.

3. On February 23, 2018, the Honorable George B. Daniels signed a Final Order and Judgment on Compensatory Damages in the Hoglan Action, which was entered on the docket on

February 26, 2018, in favor of thirteen Decedent's Estate Plaintiffs and 203 Individual Family Member Plaintiffs and against all sixteen defendants. *Hoglan* Action, ECF No. 241 (also MDL ECF No. 3905). The judgment awards (1) $469,465,035.00 in economic damages to the thirteen estates, (2) $26,000,000.00 in damages for pain and suffering to the estates, and (3) $1,346,375,000.00 in solatium damages to the Individual Family Member Plaintiffs, for total compensatory damages of $1,841,840,035.00, plus (4) prejudgment interest on the $1,372,375,000.00 awarded for pain and suffering and solatium at the rate of 4.96 percent per annum, compounded annually, from September 11, 2001, to the date of judgment. *Id.* at 3. The SDNY ordered that each of the defendants is jointly and severally liable for the entire judgment on compensatory damages, denied the request for punitive damages without prejudice, and stated that the judgment is "a final, appealable order," citing Federal Rule of Civil Procedure 54(b). *Id.* at 3, 9.

4. The judgment awards Claimant $8,500,000.00 in solatium damages as the "Child" of decedent Joseph D. Mistrulli (identified in the solatium table as "Joesph D. Mistrulli"), together with prejudgment interest as provided in the judgment. *Id.* at 7. The Hoglan judgment, which identifies Claimant and her individual award, is attached as Exhibit A.

5. Service of the judgment on Iran was completed. On August 1, 2018, the Clerk of the SDNY transmitted the final judgment documents to the Secretary of State for service on Iran under 28 U.S.C. § 1608(a)(4). By letter dated November 28, 2018, the Department of State advised the Clerk that the documents, including the Final Order and Judgment on Compensatory Damages, were delivered to the Iranian Ministry of Foreign Affairs on October 18, 2018, under cover of diplomatic notes Nos. 1087-IE through 1094-IE dated October 17, 2018, pursuant to 28 U.S.C. § 1608(a)(4) and (e), as to Iran, the Ministry of Information and Security, the Islamic Revolutionary Guard Corps, the Ministry of Petroleum, the Ministry of Economic Affairs and Finance, the Ministry of Commerce, the Ministry of Defense and Armed Forces Logistics, and the Central Bank of Iran. *Hoglan* Action, ECF No. 320-5 at 2. A copy of the Department of State's November 28, 2018 letter confirming service on Iran is attached as Exhibit B.

6. Claimant's judgment remains largely unpaid. Of the $8,500,000.00 in compensatory damages awarded to Claimant, $7,910,277.66 in compensatory damages remains outstanding, exclusive of interest. The unpaid balance continues to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

## II. The Phonix and Its Cargo Are Tied by the Government's Own Allegations to Iran, NIOC, and the IRGC.

### A. Iran, the IRGC, the Ministry of Petroleum, and NIOC

7. The United States designated Iran as a state sponsor of terrorism on January 19, 1984, and has not delisted it. Phonix Action, ECF No. 1 ¶ 6.

8. The Government alleges that the IRGC, including the IRGC-QF, is a designated Foreign Terrorist Organization, that OFAC designated the IRGC-QF under Executive Order 13,224 on October 25, 2007, and that OFAC designated the IRGC under the same order on October 13, 2017. *Id.* ¶¶ 16–17, 50. The IRGC is a judgment debtor in Claimant's judgment.

9. The Government alleges that on October 26, 2020, OFAC designated both the Iranian Ministry of Petroleum and NIOC under Executive Order 13,224 in connection with their support for the IRGC-QF, and that the Department of the Treasury reported to Congress in 2012 that NIOC is an agent or affiliate of the IRGC. *Id.* ¶¶ 10, 21. The Ministry of Petroleum and NIOC (identified in the Hoglan judgment as the National Iranian Oil Corporation) are judgment debtors in Claimant's judgment.

10. The Government further alleges that IOTC, a subsidiary of NIOC, operates the Kharg Oil Terminal on Kharg Island, Iran, and the Jask Oil Terminal east of the Strait of Hormuz, and that the Kharg terminal receives oil from fields operated by NISOC, also a subsidiary of NIOC. *Id.* ¶¶ 22–26.

## B. The Phonix and the Petroleum Assets

11. The Phonix (IMO 9198317) is a crude oil tanker built in 2001 that has previously been named the LUNA LAKE, the PACIFIC CHALLENGER, and the FORMOSAPETRO CHALLENGER under the same IMO number. *Id.* ¶ 27. The Government alleges that, although the Phonix claims to fly the flag of Guyana, it is not legitimately flagged there, and that an unauthorized entity has falsely registered numerous Iran-linked tankers under the Guyanese flag. *Id.* ¶¶ 28–29.

12. The Government alleges that since at least approximately May 2023, the Phonix has been managed, operated, and owned by Vision, and that Faith Enterprise, which shares Vision's business address, is the vessel's registered owner. *Id.* ¶¶ 30, 32. On or about December 3, 2024, OFAC designated Vision under Executive Order 13902, as amended, for operating in the petroleum sector of the Iranian economy, stated that Vision managed and operated the Phonix, which had carried millions of barrels of Iranian crude oil to Asia since 2022, and identified the Phonix as blocked property in which Vision has an interest. *Id.* ¶ 31.

13. The Government alleges, based on a confidential human source, that since approximately May 2023 the Phonix has loaded more than 15 million barrels of Iran-origin crude oil at Kharg Island, and has received more than 6 million additional barrels by ship-to-ship transfer from Kharg Island and Assaluyeh, Iran, all delivered to Asia. *Id.* ¶ 38. Those voyages include: a loading of approximately 1.9 million barrels at the T-Jetty of Kharg Island on or about October 7, 2025, which the Phonix transferred by ship-to-ship transfer to the M/T LUNA LUSTER in the Riau Archipelago on or about December 3, 2025; and a loading of approximately 1.9 million barrels at Kharg Island on or about January 3–6, 2026. *Id.* ¶¶ 41–44.

14. The Government alleges that between approximately April 9 and April 12, 2026, the Phonix called at the Jask Oil Terminal, operated by IOTC, and loaded approximately 1.9 million barrels of Iran-origin crude oil, and that on or about April 20, 2026, the vessel, then broadcasting as the MAJESTIC X, reported a draft showing it was fully laden. *Id.* ¶¶ 25, 46–47. This cargo, the Petroleum Assets, was loaded after OFAC's General License U cutoff of March 20, 2026. *Id.* ¶ 46 n.4. The Complaint identifies no license authorizing dealings in the cargo after that authorization expired. The Government has since represented to the Court that it gave notice of this action to NIOC as the purported owner of the cargo, and that ownership of the cargo remains with

the Iranian government. *Phonix* Action, ECF No. 15 at 1 & n.1. The Government has also represented to the Court that oil samples recovered from the Phonix "confirm that the oil cargo was supplied by the National Iranian Oil Company" and loaded at the Jask Oil Terminal, and that "[t]he only bills of lading identified in the document review indicate that ownership remains with NIOC." *Phonix* Action, ECF No. 7 at 2, 22.

15. The Government further alleges that the Phonix spoofed its Automatic Identification System signal on multiple occasions, including while heading toward and departing Kharg Island, a practice used to conceal the origin of Iran-origin oil shipped for the benefit of the IRGC. *Id.* ¶¶ 34–37, 40, 44.

16. The Government alleges that on or about April 22, 2026, the Coast Guard contacted the Phonix's captain, who claimed the vessel was Guyana-flagged. After Guyanese officials confirmed that claim was false, the Phonix was treated as stateless and interdicted. *Id.* ¶ 48. According to the Government's notice of forfeiture of the vessel, the vessel was seized from Faith Enterprise Ltd. on April 23, 2026. Phonix Action, ECF No. 21-1 at 2.

17. On these allegations, the Government asserts that the Phonix and the Petroleum Assets are subject to forfeiture because they afford NIOC, IOTC, and NISOC, among others, sources of influence over the IRGC and the IRGC-QF. *Id.* ¶ 50 & at 18–19 (Count One).

## III. Under TRIA, Claimant Has a Senior Interest in the Petroleum Assets.

18. Constitutional standing in a forfeiture action requires only "any colorable claim on the property." *United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085, 1090 (D.C. Cir. 2017) (quoting *United States v. Emor*, 785 F.3d 671, 676 (D.C. Cir. 2015)). Section 201(a) of TRIA supplies that claim to a judgment creditor of a terrorist party, because the claim would be extinguished by a final order forfeiting the property to the United States and would be redressed by an order allowing the creditor to apply the property to her judgment. *United States v. All Petroleum-Prod. Cargo Aboard the Achilleas with Int'l Mar. Org. No. 9398072*, No. 21-0305 (PLF), slip op. at 7–13 (D.D.C. Sept. 4, 2026); *see also United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616–17 (7th Cir. 2015). As to statutory standing, *Achilleas* held that the requirement of 18 U.S.C. § 983(a)(2)(C) and Supplemental Rule G(5) to state an interest in the specific property is an execution-related barrier that "must give way to the TRIA." *Achilleas*, slip op. at 13–20. Here, the facts alleged in the Government's complaint and Claimant's judgment establish more than a colorable claim to the Petroleum Assets.

19. Claimant holds a judgment against Iran and its agencies and instrumentalities for harms resulting from acts of terrorism sponsored by Iran. TRIA provides that "[n]otwithstanding any other provision of law," those who hold judgments against a "terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality" "to satisfy such judgment to the extent of any compensatory damages." TRIA § 201(a), 116 Stat. at 2337.

20. Because it expressly overrides conflicting laws, TRIA necessarily overrides "the civil-forfeiture statute." *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 643 (D.C. Cir. 2025); *see also Achilleas*, slip op. at 15–16.

21. The Government's allegations and Claimant's judgment satisfy each requirement of TRIA, and in turn establish Claimant's senior interest in the Defendant Property over the Government and any non-TRIA claimant. In summary:

- Claimant holds a judgment for compensatory damages against Iran arising from acts of terrorism under 28 U.S.C. § 1605A;
- Iran is a "terrorist party" because it has been designated as a state sponsor of terrorism. See TRIA § 201(d)(4); Exec. Order No. 13,599, 77 Fed. Reg. 6659 (Feb. 8, 2012); Phonix Action, ECF No. 1 ¶ 6;
- NIOC, a judgment debtor, is an agency or instrumentality of Iran, and the Government alleges that Vision, the Phonix's manager, operator, and owner, was designated for operating in Iran's petroleum sector and used the vessel to carry Iran-origin oil loaded at terminals operated by IOTC, a subsidiary of NIOC. Phonix Action, ECF No. 1 ¶¶ 21–25, 30–31, 38–47. *See Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107 (2d Cir. 2016); and
- The Petroleum Assets fall within TRIA's definition of "blocked assets." TRIA § 201(d)(2)(A).

22. TRIA defines "blocked assets" to include "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act ("IEEPA"). TRIA § 201(d)(2)(A). The Petroleum Assets are Iran-origin crude oil loaded at the Jask Oil Terminal operated by IOTC, a subsidiary of NIOC, and the Government itself represents that NIOC is the purported owner of the cargo and that ownership of the cargo remains with the Iranian government. *Id.* ¶¶ 22, 25, 46–48; Phonix Action, ECF No. 15 at 1 & n.1; ECF No. 7 at 2, 22. The D.C. Circuit has held that documents identifying NIOC as an oil cargo's consignor, "combined with NIOC's central position in the Iranian oil industry support a reasonable inference that the Defendant Property belonged to NIOC." *United States v. All Petroleum-Product Cargo Onboard the M/T Arina*, No. 24-5218, slip op. at 7–8 (D.C. Cir. Apr. 21, 2026). The Government alleges that OFAC designated NIOC under Executive Order 13,224, an IEEPA-based sanctions authority, on October 26, 2020, *id.* ¶ 21, and that on or about December 3, 2024, OFAC designated Vision under Executive Order 13902, also IEEPA-based, and identified the Phonix, on which the cargo was carried, as blocked property in which Vision has an interest, *id.* ¶ 31. Executive Order 13,599 blocks "[a]ll property and interests in property of the Government of Iran" that are in the United States or that come within the possession or control of any United States person. Exec. Order No. 13,599 § 1(a), 77 Fed. Reg. 6659 (Feb. 8, 2012); 31 C.F.R. § 560.211(a). Because the Government represents that ownership of the cargo remains with NIOC and the Iranian government, the Petroleum Assets are blocked under those IEEPA-based authorities independently of the Government's forfeiture seizure under 18 U.S.C. § 981(a)(1)(G)(i) and the commencement of this action. An asset is "frozen" if it is "difficult to convert into cash," and the restriction "need not be fully immobilizing."

*Levin*, 156 F.4th at 639. Neither the pendency of this forfeiture action nor an OFAC license authorizing the Government to seize or forfeit property unfreezes it. *Id.* at 639–41; *Achilleas*, slip op. at 8 n.4. The Petroleum Assets therefore qualify as blocked assets subject to execution under TRIA.

23. Pursuant to 18 U.S.C. § 983(a) and Supplemental Rule G(5)(a), Claimant hereby asserts a protective claim against the Defendant Property, namely All Petroleum Product Cargo aboard the M/T PHONIX with IMO number 9198317 (26-FBI-003173), and all proceeds traceable thereto, to the full extent necessary and available to satisfy, in whole or in part, the compensatory damages owed to her under her judgment against Iran and the other judgment debtors, plus post-judgment interest and costs as applicable, with the amount recoverable to be determined by the value of the Petroleum Assets at the time they are applied toward satisfaction of her judgment. If the Petroleum Assets are sold, this claim continues against the net proceeds as the substitute res, which must be held in an interest-bearing account pending the conclusion of this action. Supplemental Rule G(7)(b)(iv). The Government has withdrawn its request for an interlocutory sale. Phonix Action, ECF No. 15 at 2.

24. The Government's notice of civil forfeiture of the Petroleum Assets was first published on www.forfeiture.gov on August 25, 2026. Phonix Action, ECF No. 21-2. Under Supplemental Rule G(5)(a)(ii)(B), a claim is due 60 days after the first day of publication unless the court for good cause sets a different time. Sixty days after August 25, 2026 is Saturday, October 24, 2026, so the period runs through Monday, October 26, 2026. Fed. R. Civ. P. 6(a)(1)(C). This Notice is therefore timely as to the Petroleum Assets. Claimant did not receive direct notice of this action from the Government. The September 28, 2026 date stated in the Government's September 8, 2026 status report was computed from direct notices sent to others, Phonix Action, ECF No. 15 at 1–2, and does not govern a claimant who received no direct notice. To the extent the Government or the Court contends that a different date governs the Petroleum Assets, Claimant respectfully requests that the Court find good cause under Supplemental Rule G(5)(a)(ii) to accept this Notice as timely. Claimant reserves all rights as to the Phonix itself.

25. This Notice asserts Claimant's interest in the Defendant Property under Supplemental Rule G and does not itself seek a writ of attachment, garnishment, or execution or other affirmative process in this action. Claimant reserves all rights and remedies available at law or in equity to enforce her interest in the Defendant Property, including the right to seek a turnover of the Defendant Property or its proceeds under TRIA, notwithstanding the Government's forfeiture efforts.

26. Claimant reserves all rights concerning the relative priority and distribution among claimants holding judgments against Iran, including as to the cross-claims asserted at Phonix Action, ECF No. 32.

27. Claimant will file an answer or a motion under Rule 12 within 21 days after the filing of this Notice, as required by Supplemental Rule G(5)(b). In accordance with Supplemental Rule G(5)(a)(i)(D), this Notice is being served on the Government's attorney, Assistant United

States Attorney Rajbir Datta, and on all counsel of record, as set out in the attached certificate of service.

28. This Notice is verified under penalty of perjury by the attached declaration of Claimant pursuant to 28 U.S.C. § 1746.

WHEREFORE, Claimant respectfully requests that the Court (a) recognize this Notice and Claimant's interest in the Petroleum Assets and any proceeds under TRIA § 201(a); (b) deny forfeiture of the Petroleum Assets to the extent of that interest; (c) permit Claimant to apply the Petroleum Assets or their proceeds, to the extent necessary, to the satisfaction of her judgment; (d) in the alternative, accept this Notice as timely for good cause under Supplemental Rule G(5)(a)(ii); and (e) grant such other relief as the Court deems just and proper.

Dated: October 26, 2026

Respectfully submitted,

**Angela Mistrulli Cantone**
*Pro Se Claimant*
4402 Sumac Lane
Eau Claire, Wisconsin 54701
Telephone: 864-293-5296
Email: misslady0621@gmail.com

## VERIFICATION OF CLAIMANT

I, Angela Mistrulli Cantone, declare pursuant to 28 U.S.C. § 1746:

1. I hold a final, enforceable judgment, pursuant to 28 U.S.C. § 1605A, in my favor and against (1) Islamic Republic of Iran; (2) Ayatollah Ali Hoseini-Khamenei; (3) Ali Akbar Hashemi Rafsanjani; (4) Iran's Ministry of Information and Security; (5) Islamic Revolutionary Guard Corps; (6) Iran's Ministry of Petroleum; (7) National Iranian Oil Corporation; (8) National Iranian Tanker Corporation; (9) National Iranian Gas Company; (10) National Iranian Petrochemical Company; (11) Iran's Ministry of Commerce; (12) Iran's Ministry of Economic Affairs and Finance; (13) Iran's Ministry of Defense and Armed Forces Logistics; (14) Iran Airlines; (15) Central Bank of Iran; and (16) Hezbollah, in *Hoglan v. Islamic Republic of Iran*, Case No. 1:11-cv-07550 (GBD)(SN) (S.D.N.Y.), related to *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD)(SN) (S.D.N.Y.).

2. My individual award under the judgment is $8,500,000.00 in solatium damages as the child of Joseph D. Mistrulli, who was killed in the terrorist attacks of September 11, 2001, together with prejudgment interest as provided in the judgment. Of that award, $7,910,277.66 in compensatory damages remains outstanding, exclusive of interest.

3. I assert my rights under Section 201(a) of the Terrorism Risk Insurance Act of 2002 as a judgment creditor of Iran and its agencies and instrumentalities, and I assert an interest in the Defendant Property, All Petroleum Product Cargo aboard the M/T PHONIX with IMO number 9198317 (26-FBI-003173), which is the subject of this forfeiture proceeding.

4. I submit the foregoing Notice of Verified Claim on my own behalf, *pro se*, and not as a member of any group of judgment creditors.

5. I have read the foregoing Notice of Verified Claim and, to the best of my knowledge, know the contents and information contained in it to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of October, 2026.

Respectfully submitted,

[signature]

**Angela Mistrulli Cantone**
*Pro Se Claimant*
4402 Sumac Lane
Eau Claire, Wisconsin 54701
Telephone: 864-293-5296
Email: misslady0621@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2026, I filed the foregoing Notice of Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture *In Rem*, together with its attachments, including Claimant's Verification, with the Clerk of the United States District Court for the District of Columbia. I further certify that I caused a copy of the same to be sent by email and by USPS first-class mail on October 26, 2026, to counsel of record listed below:

Rajbir Datta
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W., Washington, DC 20001
Rajbir.Datta@usdoj.gov

Joshua L. Sohn and Stephen C. Quarcoo
U.S. Department of Justice
1400 New York Avenue, N.W., Washington, DC 20005
Joshua.Sohn@usdoj.gov; Stephen.Quarcoo@usdoj.gov

Sean Heiden
U.S. Department of Justice, National Security Division, 950 Pennsylvania Avenue, N.W., Suite 7700, Washington, DC 20530
Sean.Heiden2@usdoj.gov
Counsel for the United States

Aryeh S. Portnoy
Crowell & Moring LLP
600 Fifth Street, N.W., Washington, DC 20001
aportnoy@crowell.com
Counsel for the Iranian Terrorism Victims

Joseph T. McClure and Michael Dockterman
McDermott Will & Schulte LLP
500 North Capitol Street, N.W., Washington, DC 20001
jmcclure@mcdermottlaw.com; mdockterman@mcdermottlaw.com
Counsel for Claimants with Successful Judgments Against Iran (ECF No. 24)

Richard D. Heideman
Heideman Nudelman & Kalik, PC
5335 Wisconsin Avenue, N.W., Suite 440, Washington, DC 20015
rdheideman@hnklaw.com
Counsel for Claimants with Successful Judgments Against Iran (ECF No. 24)

Christopher Klotz and Douglass A. Kreis
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 East Main Street, Suite 200, Pensacola, FL 32502
cklotz@awkolaw.com; dkreis@awkolaw.com
Counsel for the Swinney Claimants

Joshua M. Ambush
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road, Suite 303, Baltimore, MD 21208
jambush@ambushlaw.com
Counsel for the Ambush Claimants

Dated: October 26, 2026

**Angela Mistrulli Cantone**
*Pro Se Claimant*
4402 Sumac Lane
Eau Claire, Wisconsin 54701
Telephone: 864-293-5296
Email: misslady0621@gmail.com

# EXHIBIT A

ELECTRONICALLY FILED
DATE FILED: FEB 2 6 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---X

*IN RE* TERRORIST ATTACKS ON SEPTEMBER 11, 2001

**FINAL ORDER AND JUDGMENT ON COMPENSATORY DAMAGES**

**1:03 MDL 1570 (GBD)(SN)**

---X

**This Document Relates to**
***Hoglan v. Iran***
**1:11-cv-07550 (GBD)(SN)**

WHEREAS, evidence as to liability in this matter was submitted by Plaintiffs in filings with this Court on July 10, 2015;

WHEREAS, a hearing on liability was held on August 17, 2015, at which evidence was presented, including the evidence previously submitted by Plaintiffs in *Havlish, et al. v. bin Laden, et al.*, 03-cv-09848 (GBD)(FM) on May 19, 2011, July 13, 2011, August 19, 2011, and December 15, 2011, in addition to supplemental evidence filed with this Court, including extensive evidence filed confidentially under seal, and the July 10, 2015 evidence referenced above, all of which was admitted into evidence in this case;

WHEREAS, on August 31, 2015, this Court entered Findings of Fact and Conclusions of Law and further, on that same date, issued an Order of Judgment based on such Findings of Fact and Conclusions of Law, the evidence presented in support thereof, and the entire record in this case, thereby entering final judgment as to liability in favor of Plaintiffs and against the following Defendants:

1. Islamic Republic of Iran;
2. Ayatollah Ali Hoseini-Khamenei;

3. Ali Akbar Hashemi Rafsanjani;

4. Iran's Ministry of Information and Security;

5. Islamic Revolutionary Guard Corps;

6. Iran's Ministry of Petroleum;

7. National Iranian Oil Corporation;

8. National Iranian Tanker Corporation;

9. National Iranian Gas Company;

10. National Iranian Petrochemical Company;

11. Iran's Ministry of Commerce;

12. Iran's Ministry of Economic Affairs and Finance;

13. Iran's Ministry of Defense and Armed Forces Logistics;

14. Iran Airlines;

15. Central Bank of Iran; and,

16. Hezbollah;

WHEREAS, United States Magistrate Judge Sarah Netburn issued Reports and Recommendations on October 12, 2016, October 14, 2016, October 24, 2016, and August 8, 2017, with regard to the award of damages;

WHEREAS, this Court adopted these four Reports and Recommendations in Orders dated October 31, 2016, June 21, 2017, and November 17, 2017, respectively;

WHEREAS, this Court entered Partial Final Judgments dated October 31, 2016, June 21, 2017, and November 17, 2017;

WHEREAS, Plaintiffs have requested that a single Final Judgment with regard to compensatory damages and prejudgment interest for all of the successful Plaintiffs, and naming

each of the liable Defendants, be entered in this case, for purposes of clarity for any judgment enforcement action;

It is HEREBY

ORDERED that the final compensatory damages judgment is entered in favor of Plaintiffs, comprised of the thirteen (13) Decedent's Estate Plaintiffs and the two hundred, three (203) Individual Family Members Plaintiffs listed in this Order and Judgment, and against all sixteen (16) Defendants listed above; and, it is FURTHER

ORDERED that such Plaintiffs are awarded: *(1)* economic compensatory damages to the thirteen (13) Decedent's Estate Plaintiffs in the aggregate amount of $469,465,035, as more specifically set forth below; *(2)* compensatory damages for pain and suffering of $2,000,000 per Decedent's Estate Plaintiff for a total of $26,000,000, as more specifically set forth below; *(3)* compensatory damages for solatium to the Individual Family Members Plaintiffs totaling $1,346,375,000, as more specifically set forth herein below; and, *(4)* prejudgment interest on the amount of $1,372,375,000 awarded herein for compensatory pain and suffering and solatium damages from September 11, 2001, to the date of judgment at the rate of 4.96 percent per annum, compounded annually; and, it is FURTHER

ORDERED that each and every one of the Defendants is jointly and severally liable for the entire JUDGMENT on compensatory damages; and, it is FURTHER

ORDERED that Plaintiffs' request for punitive damages is DENIED WITHOUT PREJUDICE to being considered in conjunction with the same issue in other cases in the multi-district litigation captioned *In Re: Terrorist Attacks on September 11, 2001*, 1:03 MDL 1570 (GBD)(SN); and, it is FURTHER

ORDERED that the economic compensatory damages and non-economic compensatory damages awarded to the thirteen (13) Decedent's Estate Plaintiffs are as follows:

| DECEDENT | ECONOMIC LOSS | PAIN & SUFFERING | TOTAL AWARD |
|---|---|---|---|
| Estate of Siew Nya Ang | $7,407,342 | $2,000,000 | $9,407,342 |
| Estate of Mark Kendall Bingham | $7,617,663 | $2,000,000 | $9,617,663 |
| Estate of Joyce Ann Carpeneto | $1,926,378 | $2,000,000 | $3,926,378 |
| Estate of Wayne T. Davis | $9,388,123 | $2,000,000 | $11,388,123 |
| Estate of Timmy Grazioso | $307,289,003 | $2,000,000 | $309,289,003 |
| Estate of LeRoy W. Homer, Jr. | $9,281,150 | $2,000,000 | $11,281,150 |
| Estate of Hweidar Jian | $10,108,875 | $2,000,000 | $12,108,875 |
| Estate of Leon Lebor | $747,568 | $2,000,000 | $2,747,568 |
| Estate of Christopher E. Lunder | $34,961,894 | $2,000,000 | $36,961,894 |
| Estate of Joseph D. Mistrulli | $4,999,143 | $2,000,000 | $6,999,143 |
| Estate of Louis Nacke | $8,185,357 | $2,000,000 | $10,185,357 |
| Estate of Sandra Wright-Cartledge | $1,132,626 | $2,000,000 | $3,132,626 |
| Estate of Marc Scott Zeplin | $66,419,913 | $2,000,000 | $68,419,913 |
| TOTAL | $469,465,035 | $26,000,000 | $495,465,035; |

AND IT IS FURTHER ORDERED that compensatory damages for solatium for the Individual Family Members Plaintiffs are awarded as follows:

| DECEDENT | PLAINTIFF | RELATIONSHIP | SOLATIUM |
|---|---|---|---|
| Mark Kendall Bingham | Alice Hoglan *a/k/a* Hoagland | Parent | $8,500,000 |
| Siew Nya Ang | Kui Liong Lee | Spouse | $12,500,000 |
| Siew Nya Ang | Winnee Lee | Child | $8,500,000 |
| Siew Nya Ang | Jeanee Lee | Child | $8,500,000 |
| Michael Bane | Arline Peabody-Bane | Step-Parent | $4,250,000 |
| Michael Bane | Brian Major | Step-Sibling | $2,125,000 |
| Michael Bane | Brenda E. Jobe | Step-Sibling | $2,125,000 |
| Joyce Ann Carpento | Joseph Carpento | Sibling | $4,250,000 |
| Sandra Wright Cartledge | Dian Dembinski | Sibling | $4,250,000 |
| Sandra Wright Cartledge | Loretta Haines | Sibling | $4,250,000 |
| Sandra Wright Cartledge | Stephen Bradish | Sibling | $4,250,000 |
| Sandra Wright Cartledge | Jack Bradish | Sibling | $4,250,000 |
| Sandra Wright Cartledge | Geraldine Deborah Spaeter | Sibling | $4,250,000 |
| Peter Chirchirillo | Nicholas Chirchirillo | Child | $8,500,000 |
| Peter Chirchirillo | Michael Chirchirillo | Child | $8,500,000 |
| Jeffrey Coale | JoanAnn Coale | Parent | $8,500,000 |
| Jeffrey Coale | Leslie Coale Brown | Sibling | $4,250,000 |

| | | | |
|---|---|---|---|
| Daniel M. Coffey | Jeanette Coffey | Parent | $8,500,000 |
| Daniel M. Coffey | Estate of Daniel F. Coffey, Jr. | Parent | $8,500,000 |
| Jason Coffey | Colleen McDonald | Fiancee | $12,500,000 |
| Jeffrey Collman | Estate of Beverly Sutton | Parent | $8,500,000 |
| Jeffrey Collman | Carolyn Sutton | Sibling | $4,250,000 |
| Jeffrey Collman | Vicki Lynn Michel | Sibling | $4,250,000 |
| Jeffrey Collman | Keith Bradkowski | Spouse | $12,500,000 |
| Jeffrey Collman | Kathryn Collman | Step-Parent | $4,250,000 |
| Jeffrey Collman | Charles Gengler | Step-Sibling | $2,125,000 |
| Jeffrey Collman | Steven Gengler | Step-Sibling | $2,125,000 |
| Jeffrey Collman | Susan Bohan | Step-Sibling | $2,125,000 |
| Wayne T. Davis | Tanya Davis | Spouse | $12,500,000 |
| Wayne T. Davis | Gabrielle Hunter Davis | Child | $8,500,000 |
| Wayne T. Davis | Malachai Roarke Davis | Child | $8,500,000 |
| Wayne T. Davis | Noverta Davis-Dean | Parent | $8,500,000 |
| Michael Diehl | Jason Diehl | Child | $8,500,000 |
| Michael Diehl | Jeannette Diehl | Child | $8,500,000 |
| Judy Fernandez | Emma Fernandez Regan | Sibling | $4,250,000 |
| Judy Fernandez | Cirilo Fernandez | Parent | $8,500,000 |
| Judy Fernandez | Richard Fernandez | Sibling | $4,250,000 |
| Ronald Gamboa | Renee L. Gamboa | Parent | $8,500,000 |
| Ronald Gamboa | Estate of Ranulf Gamboa | Parent | $8,500,000 |
| Ronald Gamboa | Maria Joule | Sibling | $4,250,000 |
| Ronald Gamboa | Rachel G. Malubay | Sibling | $4,250,000 |
| William Godshalk | James Bond Godshalk | Parent | $8,500,000 |
| William Godshalk | Jane G. Haller | Sibling | $4,250,000 |
| William Godshalk | Aleese Hartmann | Fiancee | $12,500,000 |
| John Grazioso | Kathryn Grazioso | Child | $8,500,000 |
| John Grazioso | Kristen Grazioso | Child | $8,500,000 |
| John Grazioso | Michael Grazioso | Child | $8,500,000 |
| John Grazioso | Sandra Grazioso | Parent | $8,500,000 |
| John Grazioso | Carolee Azzarello | Sibling | $4,250,000 |
| John Grazioso | Karen Ventre | Sibling | $4,250,000 |
| John Grazioso | Krysty Grazioso | Sibling | $4,250,000 |
| Timmy Grazioso | Deborah Grazioso | Spouse | $12,500,000 |
| Timmy Grazioso | Sandra Grazioso | Parent | $8,500,000 |
| Timmy Grazioso | Carolee Azzarello | Sibling | $4,250,000 |
| Timmy Grazioso | Lauren Grazioso | Child | $8,500,000 |
| Timmy Grazioso | Briana Grazioso | Child | $8,500,000 |
| Timmy Grazioso | Karen Ventre | Sibling | $4,250,000 |
| Timmy Grazioso | Krysty Grazioso | Sibling | $4,250,000 |
| James Halvorson | Douglas Halvorson | Child | $8,500,000 |
| James Halvorson | Estate of Evelyn Halvorson | Parent | $8,500,000 |

| | | | |
|---|---|---|---|
| James Halvorson | Kate Halvorson | Sibling | $4,250,000 |
| Donald J. Havlish | Michaela Havlish | Child | $8,500,000 |
| Donald G. Havlish | Lea Michaela Bitterman | Step-Child | $8,500,000 |
| Donald G. Havlish | Sean Bitterman | Step-Child | $8,500,000 |
| James Jeffery Hobin | Derrick Hobin | Child | $8,500,000 |
| LeRoy W. Homer, Jr. | Melodie Homer | Spouse | $12,500,000 |
| LeRoy W. Homer, Jr. | Laurel Homer | Child | $8,500,000 |
| Hweidar Jian | Ju-Hsiu Jian | Spouse | $12,500,000 |
| Hweidar Jian | William Jian | Child | $8,500,000 |
| Hweidar Jian | Kevin Jian | Child | $8,500,000 |
| Donald W. Jones | Audrey R. Jones | Parent | $8,500,000 |
| Donald W. Jones | John R. Jones | Parent | $8,500,000 |
| Donald W. Jones | Robert A. Jones | Sibling | $4,250,000 |
| Donald W. Jones | Candy Moyer | Sibling | $4,250,000 |
| Jeanette LaFond-Menchino | Anita Korsonsky | Sibling | $4,250,000 |
| Jeanette LaFond-Menchino | Dina LaFond | Parent | $8,500,000 |
| Denis Lavelle | Estate of Emily Lavelle | Parent | $8,500,000 |
| Denis Lavelle | Patricia Caloia | Sibling | $4,250,000 |
| Denis Lavelle | Barbara Dziadek | Sibling | $4,250,000 |
| Denis Lavelle | Kathleen Palacio | Sibling | $4,250,000 |
| Denis Lavelle | Paul Lavelle | Sibling | $4,250,000 |
| Leon Lebor | Bessie Lebor | Parent | $8,500,000 |
| Leon Lebor | Barbara Lurman | Child | $8,500,000 |
| Leon Lebor | Joy a.k.a Rina Kaufman | Sibling | $4,250,000 |
| Robert Levine | Stephanie Giglio | Child | $8,500,000 |
| Catherine Lisa LoGuidice | Estate of Carmello Joseph LoGuidice | Parent | $8,500,000 |
| Joseph Lostrangio | Joseph Lostrangio, Jr. | Child | $8,500,000 |
| Joseph Lostrangio | Cathryn Lostrangio | Child | $8,500,000 |
| Joseph Lostrangio | James Lostrangio | Parent | $8,500,000 |
| Christopher E. Lunder | Karen Lunder | Spouse | $12,500,000 |
| Noell Maerz | Erich Maerz | Sibling | $4,250,000 |
| Mary Melendez | Ramon Melendez | Child | $8,500,000 |
| Mary Melendez | Ricky Melendez | Child | $8,500,000 |
| Mary Melendez | Jesse Melendez | Child | $8,500,000 |
| Mary Melendez | Tyler Melendez | Child | $8,500,000 |
| Mary Melendez | Florence Rosario | Sibling | $4,250,000 |
| Mary Melendez | Margaret Montanez | Sibling | $4,250,000 |
| Peter T. Milano | Peter C. Milano | Child | $8,500,000 |
| Peter T. Milano | Jessica Milano | Child | $8,500,000 |
| Peter T. Milano | Alfred Milano | Sibling | $4,250,000 |
| Peter T. Milano | Frank Milano | Sibling | $4,250,000 |
| Peter T. Milano | Maureen Racioppi | Sibling | $4,250,000 |

| | | | |
|---|---|---|---|
| Peter T. Milano | Thomas Milano | Sibling | $4,250,000 |
| Joesph D. Mistrulli | Philomena Mistrulli | Spouse | $12,500,000 |
| Joesph D. Mistrulli | MaryAnn Mistrulli | Child | $8,500,000 |
| Joesph D. Mistrulli | Joseph Mistrulli | Child | $8,500,000 |
| Joesph D. Mistrulli | Angela Mistrulli Cantone | Child | $8,500,000 |
| Joesph D. Mistrulli | Ann Mistrulli | Parent | $8,500,000 |
| Joesph D. Mistrulli | Maria Lambert | Sibling | $4,250,000 |
| Joesph D. Mistrulli | Johnny Mistrulli | Sibling | $4,250,000 |
| Yvette Moreno | Rolando Ruben Moreno | Sibling | $4,250,000 |
| Yvette Moreno | Leiana Moreno | Sibling | $4,250,000 |
| Yvette Moreno | Noelia Moreno | Sibling | $4,250,000 |
| Louis Nacke | Amy Martinez | Spouse | $12,500,000 |
| Brian Nunez | Eric Nunez | Sibling | $4,250,000 |
| Brian Nunez | Neal Green | Sibling | $4,250,000 |
| Salvatore T. Papasso | Theresa Papasso | Parent | $8,500,000 |
| Salvatore T. Papasso | Salvatore Papasso | Parent | $8,500,000 |
| Salvatore T. Papasso | Vincent Papasso | Sibling | $4,250,000 |
| John Perry | James Perry | Parent | $8,500,000 |
| John Perry | Joel R. Perry | Sibling | $4,250,000 |
| John Perry | Janice Perry | Sibling | $4,250,000 |
| Marsha Ratchford | Claudia Stallworth | Parent | $8,500,000 |
| Marsha Ratchford | Reginald Simpson | Sibling | $4,250,000 |
| Marsha Ratchford | Roosevelt Stallworth | Sibling | $4,250,000 |
| Marsha Ratchford | Carl Stallworth | Sibling | $4,250,000 |
| Marsha Ratchford | Cynthia Watts | Sibling | $4,250,000 |
| Marsha Ratchford | Angela Stallworth-Blunt | Sibling | $4,250,000 |
| Marsha Ratchford | Brian Christian | Sibling | $4,250,000 |
| Marsha Ratchford | Amanda Rogers | Sibling | $4,250,000 |
| Joshua Reiss | Gary Reiss | Parent | $8,500,000 |
| Joshua Reiss | Adam Reiss | Sibling | $4,250,000 |
| Joshua Reiss | Jordan Reiss | Sibling | $4,250,000 |
| Joshua Reiss | Jonathan Reiss | Sibling | $4,250,000 |
| Joshua Reiss | Jennifer Reiss | Sibling | $4,250,000 |
| Elvin Romero | Estate of Carmen Romero | Parent | $8,500,000 |
| Elvin Romero | Issac Romero | Parent | $8,500,000 |
| Elvin Romero | Diana Diaz | Sibling | $4,250,000 |
| Richard Rosenthal | Estate of Evan Rosenthal | Child | $8,500,000 |
| Richard Rosenthal | Seth Rosenthal | Child | $8,500,000 |
| Richard Rosenthal | Estate of Leonard Rosenthal | Parent | $8,500,000 |
| Richard Rosenthal | Estate of Florence Rosenthal | Parent | $8,500,000 |
| Richard Rosenthal | Audrey Model | Sibling | $4,250,000 |
| Maria Theresa Santillan | Victor Santillan | Sibling | $4,250,000 |
| Maria Theresa Santillan | Raymond Santillan | Sibling | $4,250,000 |

| | | | |
|---|---|---|---|
| Victor Saracini | Kirsten Saracini | Child | $8,500,000 |
| Victor Saracini | Brielle Saracini | Child | $8,500,000 |
| Scott Schertzer | Lori Brody | Sibling | $4,250,000 |
| Scott Schertzer | Ellen Schertzer | Parent | $8,500,000 |
| Hagay Shefi | Roy-Yetkutiel Shefi | Child | $8,500,000 |
| Hagay Shefi | Naomi-Ruth Shefi | Child | $8,500,000 |
| Paul K. Sloan | Patricia Sloan | Parent | $8,500,000 |
| Paul K. Sloan | Matt Sloan | Sibling | $4,250,000 |
| Paul K. Sloan | Sarah Funk | Sibling | $4,250,000 |
| George Smith | Raymond Smith, Jr. | Sibling | $4,250,000 |
| George Smith | Carl Smith | Sibling | $4,250,000 |
| George Smith | Kevin Smith | Sibling | $4,250,000 |
| George Smith | Korry Smith | Sibling | $4,250,000 |
| George Smith | Tanya Warren | Sibling | $4,250,000 |
| George Smith | Latricia Smith | Sibling | $4,250,000 |
| George Smith | Elaine Smith | Sibling | $4,250,000 |
| George Smith | Christine Jackson | Sibling | $4,250,000 |
| George Smith | Barbara Hargrove | Sibling | $4,250,000 |
| George Smith | Estate of Deborah Sallad | Sibling | $4,250,000 |
| George Smith | Estate of Marion Thomas | Grandparent | $8,500,000 |
| Timothy Soulas | Timothy P. Soulas, Jr. | Child | $8,500,000 |
| Timothy Soulas | Andrew J. Soulas | Child | $8,500,000 |
| Timothy Soulas | Christopher Soulas | Child | $8,500,000 |
| Timothy Soulas | Matthew Soulas | Child | $8,500,000 |
| Timothy Soulas | Nicole Soulas | Child | $8,500,000 |
| Timothy Soulas | Daniel Soulas | Child | $8,500,000 |
| Timothy Soulas | Frederick Soulas | Parent | $8,500,000 |
| Timothy Soulas | Stephen Soulas | Sibling | $4,250,000 |
| Timothy Soulas | Frederick Soulas III | Sibling | $4,250,000 |
| Timothy Soulas | Dan Soulas | Sibling | $4,250,000 |
| Timothy Soulas | Michelle Donlan | Sibling | $4,250,000 |
| William Steiner | Darren Steiner | Child | $8,500,000 |
| William Steiner | Jordan Steiner | Child | $8,500,000 |
| William Steiner | Meridith Reverdito | Child | $8,500,000 |
| William Steiner | Estate of Wilma Steiner | Parent | $8,500,000 |
| William Steiner | Robert Steiner | Sibling | $4,250,000 |
| William Steiner | George Steiner | Sibling | $4,250,000 |
| Andrew Stergiopoulos | Kathleen Stergiopoulos | Sibling | $4,250,000 |
| Andrew Stergiopoulos | George Stergiopoulos, Jr. | Sibling | $4,250,000 |
| Edward W. Straub | Aaron Straub | Child | $8,500,000 |
| Edward W. Straub | Jonathan Straub | Child | $8,500,000 |
| Edward W. Straub | Michael Straub | Child | $8,500,000 |
| Edward W. Straub | Samuel Straub | Child | $8,500,000 |

| | | | |
|---|---|---|---|
| Edward W. Straub | Edward Straub | Parent | $8,500,000 |
| Edward W. Straub | Stanley Straub | Sibling | $4,250,000 |
| Edward W. Straub | Matthew Straub | Sibling | $4,250,000 |
| Jennifer Tino | Salvatore Tino, Jr. | Parent | $8,500,000 |
| Jennifer Tino | Jeffrey Tino | Sibling | $4,250,000 |
| Jennifer Tino | Salvatore Tino, III | Sibling | $4,250,000 |
| Jeanmarie Wallendorf | Joseph Nicklo | Sibling | $4,250,000 |
| Jeanmarie Wallendorf | Mellanie Chafe | Sibling | $4,250,000 |
| Jeanmarie Wallendorf | Christopher Barton | Sibling | $4,250,000 |
| Jeanmarie Wallendorf | John Barton | Sibling | $4,250,000 |
| Timothy Ward | Estate of Susanne Ward-Baker | Parent | $8,500,000 |
| William Wilson | Jeanne McDermott | Sibling | $4,250,000 |
| Marc Scott Zeplin | Debra Zeplin | Spouse | $12,500,000 |
| Marc Scott Zeplin | Ryan Zeplin | Child | $8,500,000 |
| Marc Scott Zeplin | Ethan Zeplin | Child | $8,500,000 |
| **TOTAL** | | | **$1,346,375,000**; |

AND IT IS FURTHERMORE

ORDERED that Plaintiffs shall forthwith serve a copy of this Final Order and Judgment on Compensatory Damages on the Defendants.

This is a final, appealable order. *See* Fed.R.Civ.P. 54(b); Fed.R.App.P.(4)(a).

**SO ORDERED.**

DATE: FEB 2 3 2018
New York, New York

George B. Daniels
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

United States Department of State

*Washington, D.C. 20520*

November 28, 2018

Ruby Krajik
Clerk of the Court
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: Hoglan, et al. v. The Islamic Republic of Iran, et al., 1:11-cv-07550 (GBD)(SN); In Re Terrorist Attacks on September 11, 2001, 1:03-md-01570 (GBD)(SN)**

Dear Ms. Krajik:

I am writing regarding the Court's request for transmittal of a Cover Letter to Mohammad Javad Zarif, Certificate of Default (dated March 17, 2015), Order of Judgment (entered August 31, 2015), Findings of Fact and Conclusions of Law (entered August 31, 2015), Report and Recommendation #1 (dated October 12, 2016), Report and Recommendation #2 (dated October 14, 2016), Report and Recommendation #3 (dated October 24, 2016), Partial Order and Judgment (entered October 31, 2016), Memorandum Decision and Order (entered October 31, 2016), Memorandum Decision and Order (entered October 31, 2016), Memorandum Decision and Order (entered June 21, 2017), Report and Recommendation #4 (dated August 8, 2017), Memorandum Decision and Order (entered November 17, 2017), Final Order and Judgment on Compensatory Damages (entered February 26, 2018), Right to Appeal Notice, Right to Appeal Form, and Notice of Default Judgment to the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Islamic Revolutionary Guard Corps, the Iranian Ministry of Petroleum, the Iranian Ministry of Economic Affairs and Finance, the Iranian Ministry of Commerce, the Iranian Ministry of Defense and Armed Forces Logistics, and the Central Bank of the Islamic Republic of Iran pursuant to 28 U.S.C. Sections 1608(a)(4) and (e) as defendants in the above referenced lawsuit.

Because the United States does not maintain diplomatic relations with the Government of Iran, the Department of State is assisted by the Foreign Interests Section of the Embassy of Switzerland in Tehran in delivering these documents to the Iranian Ministry of Foreign Affairs. The documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes Nos. 1087-IE, 1088-IE, 1089-IE, 1090-IE, 1091-IE, 1092-IE, 1093-IE, and 1094-IE, dated October 17, 2018 and delivered on October 18, 2018. Certified copies of these diplomatic notes are enclosed.

Sincerely,

Jared N. Hess
Attorney Adviser
Overseas Citizens Services
Office of Legal Affairs